No. 48,455

Marjorie Fuqua, *Appellee,* v. Lyle R. Hanson, and Jorene J. Hanson, *Appellants.*

(567 P.2d 862)

Opinion filed July 11, 1977.

*Charles P. Fleming, Jr.,* of Mission, argued the cause and was on the brief for the appellants.

*James L. Eisenbrandt,* of Soden, Eisenbrandt, Isenhour & Gates, of Mission, argued the cause, and *William O. Isenhour, Jr.* and *Michael C. Moffet,* both of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

Fromme, J.: The defendants below appeal from a judgment

foreclosing an equitable mortgage which was evidenced by a quitclaim deed. The real property involved is an apartment complex located on the north 160 feet of Lot 12, Marty Place, a subdivision in the City of Overland Park, Johnson County, Kansas. The circumstances on which the court decreed foreclosure of the equitable mortgage arose in the following manner.

The defendant-appellants, Lyle R. Hanson and Jorene J. Hanson, owned the apartment complex subject to first and second mortgages. The second mortgage had been foreclosed and the redemption period was about to expire. The Hansons were in need of $60,000.00 to redeem the property. They traveled to Scottsdale, Arizona, to visit an aunt who had substantial financial holdings. The aunt, Marjorie Fuqua, loaned the Hansons certain municipal bonds which were pledged by the Hansons to secure a $60,000.00 loan from a bank in Kansas City. The apartment complex was redeemed from the foreclosure action. To secure the parties in event of an untimely death the Hansons mailed a quitclaim deed conveying the property to the aunt. Accompanying the deed was a written agreement setting forth the facts regarding the loan of the bonds and the execution and delivery of the deed. The agreement obligated the Hansons to satisfy the loan obtained from the Kansas City bank within six months from November 18, 1973, and to have the bonds returned to Mrs. Fuqua. The agreement further provided that Mrs. Fuqua was to transfer and reconvey the property to the Hansons when her bonds were returned.

The bank loan was not satisfied by the Hansons within the six months and the friendship which had previously existed between the aunt and the nephew deteriorated. Negotiations for a sale of the property to satisfy the agreement came to naught and one year after the bonds were loaned the aunt initiated a program of self-help to obtain possession of the apartment complex. She also filed an action to quiet her title to the property.

The action was vigorously contested and the nephew obtained a court order restoring the premises to him. Claims of fraud and estoppel were lodged against the aunt and the cause of action which began as a quiet title action was tried to the court. The court determined the amounts required to pay the bank loan and obtain return of the municipal bonds. Judgment was entered against the Hansons in that amount and it was decreed that Mrs.

Fuqua had an equitable mortgage on the apartment complex for the amount of said judgment. The property was ordered sold, the sale was held and confirmed, a certificate of purchase was issued to the purchaser and the Hansons were given a right to redeem the property within six months from the date of sale. The Hansons filed this appeal but did not redeem the property from the sheriff's sale.

The appellants set forth nineteen points on appeal. These nineteen points are totally obscured in appellant's brief where five "questions to be determined" are first listed and then only one of the four arguments contained in the brief refers to these five questions. None of these questions can be identified in the nineteen points on appeal.

This appeal was filed under the appellate rules effective prior to January 10, 1977. Rule No. 6 (d) required the appellant to "serve and file with his designation of the record a concise statement of the points on which he intends to rely and which will be briefed in the appeal." (Rules of the Supreme Court, 214 Kan. xxiii.) This court would be entirely justified in dismissing this appeal on its own motion for failure to comply with such rule but we will attempt to examine the main arguments of the appellants as best they may be discerned.

One thread of argument which runs through appellants' fifty page brief is the contention that the transaction by which the Hansons obtained the aunt's municipal bonds should not be held to give rise to an equitable mortgage on the apartment complex.

At the trial the quitclaim deed and the agreement from the appellants to Mrs. Fuqua were stipulated into evidence. The deed had been recorded by appellants and sent to Mrs. Fuqua accompanied by the agreement to return the bonds within six months. It was further stipulated at the trial:

"That on or about the 18th day of November, 1973, plaintiff provided defendants Hanson with certain municipal bonds, and plaintiff agreed that defendants Hanson could use said bonds as security and collateral for a bank loan. That defendants Hanson have never returned said municipal bonds to plaintiff."

The form of an agreement by which security is given for a debt is unimportant. If the purpose and intention behind a transaction is to secure a debt, equity will consider the substance of the transaction and give effect to that purpose and intention. A court sitting in equity is not governed by the strict rules of law in

determining whether a mortgage has been created. The lien follows if the evidence discloses an intent to charge real property as a security for an obligation. (*Hill v. Hill,* 185 Kan. 389, Syl. 4, 345 P.2d 1015.) Cases in which this court has considered circumstances giving rise to equitable mortgages may be found in *Rex v. Warner,* 183 Kan. 763, 767, 332 P.2d 572; *Hill v. Hill,* supra, p. 400; and *Benton v. Benton,* 215 Kan. 875, 878, 528 P.2d 1244. There can be no doubt that the transaction in the present case is one of those where a court exercising its equity powers should and did decree foreclosure of an equitable mortgage given to secure payment of a debt.

The second thread of argument which may be discerned by looking closely at the fabric of appellants' brief is that the plaintiff elected to sue in a quiet title action and, having elected the remedy of quiet title, she cannot obtain foreclosure of an equitable mortgage.

This argument was considered and rejected in *Kline v. Orebaugh,* 214 Kan. 207, 519 P.2d 691, and in *Benton v. Benton,* supra. The fact that a party requests one form of equitable relief does not bar the trial court from rendering such other different and equitable relief as may be justified by the evidence.

As a heading for the argument in the first section of their brief, appellants state: "Appellee [Mrs. Fuqua], by her actions and conduct prior to and during the course of this litigation, including this appeal, has transcended all rules of conscience and equity, such as to bar her recovery herein."

In the argument which follows the appellants charge that Mrs. Fuqua wrongfully took over possession of the apartment complex, that her agents violated appellants' rights in forceably ejecting Lyle R. Hanson from the property, that Mrs. Fuqua, through her counsel, wrongfully caused appellants to defend against other actions filed under city ordinances and that she was guilty of unfair tactics in obtaining the property and had unclean hands. They argue that such inequitable conduct prior to and during the course of this action justifies and requires a judgment in appellants' favor.

The clean hands doctrine is based upon the maxim of equity that he who comes into equity must come with clean hands. It provides in substance that no person can obtain affirmative relief in equity with respect to a transaction in which he has, himself,

been guilty of inequitable conduct. (*Green v. Higgins,* 217 Kan. 217, Syl. 1, 535 P.2d 446.)

The transaction which gave rise to the present action was the loan of the bonds, the pledge of the bonds as security for a bank loan, and the giving of the quitclaim deed to secure the return of the bonds in six months. There is no hint of inequitable conduct by Mrs. Fuqua with respect to this transaction. The charges against Mrs. Fuqua in collateral matters will not preclude her from obtaining equitable relief. See *Benton v. Benton,* supra, Syl. 3. Such collateral matters are the subject of the counterclaim filed by the Hansons and are the basis for their claim of damages which was separated for later trial.

The clean hands maxim is not a binding rule, but is to be applied in the sound discretion of the court. When the record wholly fails to support a claim that plaintiff has been guilty of *inequitable conduct the doctrine should not be applied. (Green v. Higgins,* supra, Syl. 2.) If this matter was raised in the trial court that court did not see fit to apply the clean hands doctrine. The clean hands doctrine is not a hard and fast rule and should be applied in the trial court's discretion so as to accomplish its purpose of promoting public policy and the integrity of the courts. We see no such public policy question in the record before us and no abuse of discretion on the part of the trial court.

Appellants make an additional argument which overlaps the charge of unclean hands. They assert that Mrs. Fuqua's conduct amounts to fraud upon the court and a fraud upon the appellants, which fraud estops Mrs. Fuqua from recovering anything in the action. The doctrine of estoppel is not applicable here. An estoppel may be recognized by a court when a party takes inconsistent positions as to factual matters; this does not relate to a later position resulting from a pronouncement of a proposition of law. Mrs. Fuqua consistently maintained she had absolute title and not an equitable mortgage. It was the court that decreed an equitable mortgage as it had the right and duty to do under the cases previously cited herein. The doctrine of estoppel does not prevent one from seeking inconsistent and alternative remedies in the same action for claims in the alternative are permitted by our code of civil procedure. (See K.S.A. 60-208[e] [2].)

We find nothing in the arguments or in the brief of appellants which would justify refusal to enforce an equitable mortgage in

favor of the plaintiff, Mrs. Fuqua. The fact that plaintiff brings an action requesting equitable relief to clear the title to real property based upon a quitclaim deed from the defendants will not prevent the trial court from determining that the transaction out of which the deed emanated created an equitable mortgage. In such case it is proper for the court to decree foreclosure for nonpayment of the debt, subject to a right of redemption, and it was not error for the trial court to proceed to have the property sold and the proceeds applied to the payment of the debt which gave rise to the equitable mortgage.

Judgment affirmed.