439 So.2d 318 (1983)
Lorn LEITMAN and John Gentile, Appellants,
v.
Richard BOONE and Donna Boone, His Wife, Appellees.
No. 82-1517.
District Court of Appeal of Florida, Third District.
October 18, 1983.
*319 Kramer & Golden and Richard A. Golden, Miami, for appellants.
No appearance for appellees.
Before SCHWARTZ, C.J., and DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
Appellants, the plaintiffs below, brought an action for specific performance of a "contract" for the sale of real estate. After a non-jury trial, the trial court denied the plaintiffs relief, finding that the defendants, the putative sellers, had not accepted the plaintiffs' offer to purchase in the manner contemplated by the parties, that is, by executing the deposit receipt form, and thus, no contract to sell the subject real estate existed. See, e.g., Mehler v. Huston, 57 So.2d 836 (Fla. 1952). Thereafter, the trial court awarded attorneys' fees to the defendants based on a provision in the deposit receipt form which stated that "[i]n connection with any litigation arising out of this contract, the prevailing party shall be entitled to recover all costs incurred, including reasonable attorneys' fees." (emphasis supplied). The plaintiffs appeal solely from the award of attorneys' fees. We reverse.
It is well established that attorneys' fees may not be awarded unless authorized by a contract or, not pertinent here, a statute, or for services performed by an attorney in creating or bringing into the court a fund or other property. See Estate of Hampton v. Fairchild-Florida Construction Co., 341 So.2d 759 (Fla. 1976); Kittel v. Kittel, 210 So.2d 1 (Fla. 1968); Codomo v. Emanuel, 91 So.2d 653 (Fla. 1956); Rader v. Recarey, 352 So.2d 550 (Fla. 3d DCA 1977). See also Rivera v. Deauville Hotel, 277 So.2d 265 (Fla. 1973); Stone v. Jeffres, 208 So.2d 827 (Fla. 1968). In the present case, the defendants' entitlement to fees rested solely on a "contract" which the trial court found was never formed. Since there is no basis to conclude that the attorneys' fee provision was a separable mini-contract enforceable in and of itself, the trial court's finding that no contract was ever formed means that no legal obligations whatsoever were created between the parties, see Brickell Townhouse, Inc. v. Hirschfield, 404 So.2d 153 (Fla. 3d DCA 1981), rev. denied, 412 So.2d 466 (Fla. 1982); accord, Seafarers' Welfare Plan v. George E. Light Boat Storage, Inc., 402 S.W.2d 231 (Tex.Civ.App. 1966); Ellis v. Williams, 312 S.W.2d 97 (Mo. 1958); 1 S. Williston, W. Jaeger, Williston on Contracts § 15 (3d ed. 1957), and that an award of attorneys' fees is precluded.
*320 We now address the dissent.
We have not for one moment suggested that the piece of paper in question (the deposit receipt) never existed, had its molecules miraculously rearranged, suddenly disappeared, was physically obliterated, or mysteriously evaporated. What we have said is that a piece of paper which, as here, was found to be a mere offer is not a contract.
"`A mere offer not assented to constitutes no contract, for there must be not only a proposal, but an acceptance thereof. So long as a proposal is not acceded to, it is binding upon neither party, and may be retracted.'"

Etheredge v. Barkley, 25 Fla. 814, 817, 6 So. 861, 862 (1889) (quoting Story, J., 1 Story, Contracts § 490).
See also Bullock v. Harwick, 158 Fla. 834, 30 So.2d 539 (1947); Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498 (1927).
The trial court's finding in the present case was that the offer made by the plaintiffs was not accepted, that is, no contract was ever formed.[1] It was not, as it might have been, that an agreement had been formed, but such agreement was not enforceable because the statute of frauds had not been satisfied. The trial court's finding is one of fact.
"When there is evidence from which it can be concluded that the parties intended to execute a written contract but never did so, it becomes a question of fact to determine whether the parties had agreed to an oral contract or whether there was to be no contract until the written contract was executed. Thus it is a question of the intent of the party whether the contemplation of the execution of a written contract was merely to memorialize a prior oral contract or whether it was intended that there should not be any binding contract until the written contract was executed. In resolving that question of fact, the absence of writing that would satisfy the statute of frauds may have some evidentiary value as indicating that there was no intent to be bound by a contract prior to the execution of a written contract."
2 R. Anderson, Uniform Commercial Code § 2-201:18 (3d ed. 1982) (footnote omitted).
Thus, as in the present case,
"[T]he purported contract on which this bill of complaint was founded was in fact no contract at all because the instrument had not been signed.

... .
"If ... a party neither had nor signified ... an intention to close the contract until it was fully expressed in a written instrument and attested by signatures, then he will not be bound until the signatures are affixed... ."

Rork v. Las Olas Co., 156 Fla. 510, 518-19, 23 So.2d 839, 843 (1945) (emphasis supplied).
Because the trial court found that there was to be no contract until the written contract was executed, and that finding is supported by substantial competent evidence, we are not free to cavalierly disregard the trial court's finding by saying that the deposit receipt was intended to be a mere memorialization of a prior agreement.
The distinction between no contract at all and a contract that is unenforceable[2] makes all the difference here. One *321 simply cannot be entitled to fees "arising out of this contract" when no contract ever existed; one may arguably be entitled to fees "arising out of this contract" where a contract exists, but its enforcement is prevented, as, for example, by the statute of frauds.[3]
"A contract where the parties have not complied with the requirements of the statute is neither void nor voidable; it has much effect upon the legal relations of the contracting parties with each other and with third persons. It can be properly described as unenforceable, however, inasmuch as the ordinary legal remedies are unavailable. If the defense of the statute is properly made, a judgment for damages for breach of the contract cannot be obtained; and neither can a decree for specific performance unless there has been fraud, mistake, or substantial part performance or action in reliance on the contract. It has been held that a statutory criminal process, provided for the enforcement of certain types of contracts, is not available; and the contract cannot be indirectly enforced by the use of tort remedies by alleging that refusal to perform the contract or to execute a sufficient memorandum is tortious, or by suing the seller of goods in trover because he has repudiated the oral contract and sold the goods to a third person.
"In the foregoing ways the statute may make a contract `invalid'; but there are many other ways in which the `validity' of the contract is recognized."
2 A. Corbin, Corbin on Contracts § 279 at 20-21 (1950) (footnotes omitted).
See also Golden v. Golden, 273 Or. 506, 541 P.2d 1397 (1975) (statute of frauds not operative to prevent evidence of the oral contract being used to obtain relief other than enforcement of contract, e.g., action by buyer to recover downpayment on oral contract for sale of land); Daugherty v. Kessler, 264 Md. 281, 286 A.2d 95 (1972) (although oral agreement of lease unenforceable between parties because of non-compliance with statute of frauds, claim that third party interfered with agreement by inducing lessee to break lease sustainable).
Next, we do not agree that Brown v. Gardens by The Sea South Condominium Association, 424 So.2d 181 (Fla. 4th DCA 1983), and Rustic Village, Inc. v. Friedman, 417 So.2d 305 (Fla. 3d DCA 1982), are closely analogous or even apposite to the present case. These cases involved actions brought under Florida's Deceptive and Unfair Trade Practices Act, Section 501.201, et seq., Fla. Stat. (1981). In each the court's holding was that where a plaintiff unsuccessfully brings a claim under the Act, the defendant, as the prevailing party, is to be awarded the statutorily authorized attorneys' fees, notwithstanding that the plaintiff's cause of action is found to be one not covered by the statute.
We have no quarrel with such a holding. The holding, however, represents no more than a judicial construction of a statute and a determination that the Legislature intended that the prevailing party in a consumer *322 protection suit be entitled to attorneys' fees without regard to the basis upon which the party prevails. Thus, by invoking an existing and valid statute which calls for an award of attorneys' fees, one may subject himself to having attorneys' fees assessed against him if he does not prevail. But surely it does not follow that when one unsuccessfully invokes a non-existent contract which calls for an award of attorneys' fees, that attorneys' fees may be awarded against him. Thus, the propriety of the attorneys' fees award in Brown and Rustic Village, Inc. flows from the existence of a valid statute, while the impropriety of the attorneys' fees award here is a consequence of the non-existence of a contract.
Care Construction, Inc. v. Century Convalescent Centers, Inc., 54 Cal. App.3d 701, 126 Cal. Rptr. 761 (1976), relied on in the dissent, sheds light on this distinction. There, even though no binding contract between the parties was found to exist, the prevailing party was said to be entitled to attorneys' fees because  and only because  a California statute was construed to provide for such fees. The statute in question, California Civil Code § 1717, provided:
"In any action on a contract, where such contract specifically provides that attorney's fees costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements."
The court interpreted the legislative purpose behind the statute to be one of mutuality: "Thus, as long as the action here involved a contract it was `on a contract' and within Civil Code, § 1717," 126 Cal. Rptr. at 764. Given the California court's interpretation of the statute, the prevailing party was entitled to fees even though no binding agreement was found to exist between the parties. See also Moulin Electric Corp. v. Roach, 120 Cal. App.3d 1067, 175 Cal. Rptr. 111 (1981). Florida has no such statute.
Similarly, we take issue with the dissent's assertion (and the similar suggestion in Sousa v. Palumbo, 426 So.2d 1072 (Fla. 4th DCA 1983)) that the plaintiffs are estopped to assert that no award of attorneys' fees can be made against them because they had previously unsuccessfully asserted that there was a contract. The plaintiffs sued on what they believed to be a contract. The trial court found that there was none. Based on that adverse legal ruling, the plaintiffs claimed that if there is no contract, there cannot be an award of attorneys' fees to the defendants.
One cannot seriously contend that a litigant cannot claim there is a contract and say to a court, "if, however, you find against me on my claim, then based on that finding, you cannot award attorneys' fees to my opponent." In judicial proceedings, a party simply is not estopped from asserting a later inconsistent position (if that it can be called), unless the party's initial position was successfully maintained.[4]Olin's, Inc. v. Avis Rental Car System of Florida, Inc., 104 So.2d 508 (Fla. 1958). See Grauer v. Occidental Life Insurance Co., 363 So.2d 583 (Fla. 1st DCA 1978), cert. denied, 372 So.2d 468 (1979). Here the plaintiffs did not successfully maintain that there was a contract, and they are thus not estopped from thereafter maintaining that since there is no contract, no attorneys' fees can be awarded.[5]
*323 As we have said, the rule which precludes a person from maintaining a position inconsistent with a previously asserted position is not applicable unless the previously asserted position was successfully maintained. See Grauer v. Occidental Life Insurance Co., 363 So.2d at 585. This is illustrated in Fuqua v. Hanson, 222 Kan. 653, 567 P.2d 862 (1977). There, Fuqua brought an action to quiet title to certain property asserting therein that she had absolute title to the property. The trial court found against her on that claim, but declared that Fuqua did have an equitable mortgage in the subject property. On appeal, Fuqua defended the trial court's ruling, and Hanson claimed that Fuqua, having initially claimed absolute title, was estopped from now claiming that she was entitled to an equitable interest in the property. The court's response, pertinent here, was that:
"The doctrine of estoppel is not applicable here. An estoppel may be recognized by a court when a party takes inconsistent positions as to factual matters; this does not relate to a later position resulting from a pronouncement of a proposition of law. Mrs. Fuqua consistently maintained she had absolute title and not an equitable mortgage. It was the court that decreed an equitable mortgage as it had the right and duty to do under the cases previously cited herein." 567 P.2d at 867.
Similarly, Leitman and Gentile consistently maintained that they had a contract with the defendants. It was the trial court that found they did not. Accordingly, they are not estopped from relying upon that adverse ruling and asserting any position consistent with the ruling.
Lastly, the dissenter is quite correct in stating that if the plaintiffs "had succeeded in enforcing the agreement, fees would unquestionably have been awarded to them." That is so because an agreement would have necessarily been found to exist. Had an agreement been found to exist, but merely found to be unenforceable, the defendants would have been entitled to attorneys' fees. Thus, the situation can hardly be characterized as heads I win, tails I win. Instead, and rather unremarkably, it is simply a matter of if there were a contract, the prevailing party is entitled to fees. There being no contract, there can be no fees.
Reversed and remanded with directions to vacate the order awarding attorneys' fees to the defendants.
SCHWARTZ, Chief Judge (dissenting).
In my view, the result reached by the court is based upon the application of a legal catch phrase rather than a reasoned analysis of the problem before us. The majority ultimately rests its conclusion upon the determination that there was really "no contract" between the parties  as if the judgment on the merits had effected a miraculous molecular rearrangement and resulting disappearance of the piece of paper upon which the appellants unsuccessfully sued. But the trial court did not rule and, notwithstanding what is often said about circuit judges, did not possess the supernatural power necessary to rule that the document had never existed or had been physically obliterated ex post facto. In any case, the issue before us is not a metaphysical, but the very practical one of the consequences of the appellants' action on an instrument which states in so many words that if one does not succeed in that enterprise, he must pay the attorney's fees of his victorious opponent. It seems clear to me that, by suing upon it, the plaintiffs, who themselves signed the instrument, necessarily subjected themselves to the effect of the attorney's fee clause of that same writing. Since that provision itself states that the prevailing party in any action "arising out of this contract" is entitled to those fees, it can make no difference which side wins the case;[1] in this context, the word "contract" must mean the paper sued upon, irrespective of what the litigation establishes is its *324 legal effect. Looking at it in a somewhat different way, by claiming that the document was enforceable and thereby inducing detrimental reliance upon that position by requiring the defendants to defend against it, the plaintiffs satisfied all the elements of an "estoppel."[2] See 28 Am.Jur.2d Estoppel and Waiver § 27 (1966). They must not now, having lost, be heard to say that the suit did not arise "under this contract" after all.[3]
This was the precise and very recent holding of Sousa v. Palumbo, 426 So.2d 1072 (Fla. 4th DCA 1983), which is exactly on point and exactly contrary to the court's decision:
The appellant's action was clearly one seeking `to enforce or interpret the rights or obligations of the parties' since such action sought an interpretation of the contract by which it would be enforceable severally against each stockholder executing the contract, each of the appellees having done so. Upon prevailing against appellant's action the appellees were entitled to fees and costs. Furthermore, in our view, the appellees should not be estopped to invoke this provision because they claimed in defense that there was no enforceable contract. To estop the appellees in such cases is to ignore the plain meaning of the attorneys' fee provision that provides for fees and costs to the prevailing party. Indeed, if anyone should be estopped it should be the appellant who claims that the agreement is valid and enforceable against the appellees, but seeks to deny validity and enforceability of the attorneys' fee provision.
426 So.2d at 1073. Accord, Anaheim Co. v. Elliott, 45 Or. App. 597, 609 P.2d 382 (1980) (defendant successfully resisting mortgage foreclosure on ground that no mortgage had been agreed to entitled to attorney's fees under provision of mortgage); see also, Care Construction, Inc. v. Century Convalescent Centers, Inc., 54 Cal. App.3d 701, 126 Cal. Rptr. 761 (1976); but cf. Moulin Electric Corp. v. Roach, 120 Cal. App.3d 1067, 175 Cal. Rptr. 111 (1981); Quagliana v. Exquisite Home Builders, Inc., 538 P.2d 301 (Utah 1975). Furthermore, unlike the majority, but like the fourth district, I think that Rustic Village, Inc. v. Friedman, 417 So.2d 305 (Fla. 3d DCA 1982) and Brown v. Gardens by the Sea South Condominium Ass'n, 424 So.2d 181 (Fla. 4th DCA 1983) (following Rustic Village) are highly persuasive. Both cases hold that a defendant who successfully argues, contrary to the plaintiff's contention, that Sec. 501.2105, Fla. Stat. (1981) does not apply to the suit is nonetheless entitled to an award under the provision of that very statute which authorizes fees to the successful party in an action brought pursuant to its terms. The majority suggests that this case is different because the statute itself, supposedly unlike the agreement here, remains extant. This view is but a reflection of the basic vaporization theory of the ruling below about which I have already expressed my incredulity. See also, Business Aide Computers, Inc. v. Central Florida Mack Trucks, Inc., 432 So.2d 681 (Fla. 5th DCA 1983) (action for rescission of lease governed by venue provision applicable to "any legal action ... taken in connection with this lease").
In sum, I prefer the square holdings in Sousa[4] and Elliott and the closely analogous *325 one in Rustic Village to a conclusion which is supported not by controlling authority, but by what I must characterize as a bit of judicial conjuration. I would affirm the order under review.
NOTES
[1] The final judgment recites in pertinent part:

"1. That certain telegram sent by Richard Boone to Pyms-Suchman Real Estate Company, was not within the contemplation of the parties to constitute an acceptance of the proposed Real Estate offer of the Plaintiffs. "2. That it was contemplated that the signing and acceptance of that certain Deposit Receipt dated January 7, 1981, by all parties would constitute a legally binding contract."
[2] This distinction is most certainly not lost on the author of the dissent. See Brickell Townhouse, Inc. v. Hirschfield, 404 So.2d 153, where Judge Schwartz wrote:

"Under these circumstances [where Brickell's offer to convey was not met by Hirschfield's acceptance] no binding contract of sale and purchase ever came into effect, and there was therefore no agreement which was legally enforceable in any fashion, much less by the extraordinary remedy of specific performance. (citation omitted). Moreover, the fact that Brickell did not execute any such agreement in writing precludes enforcement because of the statute of frauds." Id. at 154-55 (emphasis supplied).
[3] The enforcement of a contract may also be prevented by a provision in the contract preventing its enforcement until a certain condition is met. This is the meaning of Sousa v. Palumbo, 426 So.2d 1072 (Fla. 4th DCA 1983), in which there is little question that a contract between the plaintiff and the three defendant-stockholders existed, but the contract was by its terms unenforceable until the remaining three stockholders signed. Because Sousa is thus distinguishable from the present case, our disagreement with the case is restricted to the suggestion therein that the plaintiff was estopped from claiming that the defendants could not recover attorneys' fees and the court's reliance on Brown v. Gardens by The Sea South Condominium Association, 424 So.2d 181 (Fla. 4th DCA 1983), and Rustic Village, Inc. v. Friedman, 417 So.2d 305 (Fla. 3d DCA 1982), as being analogous. Our disagreement with these aspects of Sousa is more fully discussed infra. Likewise, the enforcement of a contract may be prevented by equitable considerations, such as that the contract was fraudulently induced. In such a case, since a contract exists, even though later declared to be void or voidable, certain of its provisions may be operative. See Business Aide Computers, Inc. v. Central Florida Mack Trucks, Inc., 432 So.2d 681 (Fla. 5th DCA 1983).
[4] This proposition is obvious. For example, a man who unsuccessfully contends that he is the father of a child surely is not estopped from later contending that he is not responsible for child support; a person who unsuccessfully asserts that his relationship with the tortfeasor is not such as to make him vicariously liable for the tortfeasor's act surely is not estopped to later claim that the tortfeasor found to be at fault must indemnify him.
[5] Indeed, assuming, arguendo, that other elements necessary to create an estoppel were present, it would be the defendants who would be estopped, since they successfully maintained that there was no contract and now are maintaining that there is a contract for the purpose of recovery of attorneys' fees.
[1] If the appellants had succeeded in enforcing the agreement, fees would unquestionably have been awarded to them. Heads I win; tails I win; and if the coin falls in a crack and remains upright, I win then, too. See Brown v. Gardens by the Sea South Condominium Ass'n, 424 So.2d 181, 184 (Fla. 4th DCA 1983).
[2] By using this expression, the writer may well be subject to the charge of being overly simplistic which has been leveled against the majority. It can only be said that at least my magic word is appropriate.
[3] The majority's faulty contrary analysis is based on the erroneous belief that the estoppel goes to the existence of a contract vel non; rather, it concerns the plaintiffs' inability to deny that their action arose under it.
[4] With similar results, I have previously expressed my view that we should ordinarily follow the controlling decisions of our fellow district courts. Berek v. Metropolitan Dade County, 396 So.2d 756, 760 n. 1 (Fla. 3d DCA 1981) (Schwartz, J. dissenting), aff'd, 422 So.2d 838 (Fla. 1982). This policy is certainly subject to an exception which arises when the court cannot conscientiously agree with a previous opinion. Since, however, I do not believe that the majority is even close to correct in this case, I fail entirely to see how it can feel strongly about its error.