No. 55,327

Tip Top Credit Union of Hillsboro, Kansas, *Plaintiff/Appellee, Cross-Appellant,* v. Joseph A. Lies; Joseph N. Lies, and Doris C. Lies, husband and wife; William B. Lies and Karen Lies, husband and wife; Central Soya of Kansas City, Inc.; Andale Farmers Cooperative Co.; Equitable Life Assurance Society of the United States; and Board of County Commissioners, Sedgwick County, Kansas, *Defendants/Appellants, Cross-Appellees.*

(677 P.2d 540)

Opinion filed February 18, 1984.

*Orval L. Fisher,* of Fisher & Monnat, of Wichita, argued the cause, and *Stanley Spurrier, III,* of the same firm, was with him on the briefs for the appellant and cross-appellee, Joseph A. Lies.

*Richard V. Foote,* of Matlack & Foote, of Wichita, argued the cause, and *Patricia A. Vogel,* of the same firm, was with him on the brief for the appellee/cross-appellant.

The opinion of the court was delivered by

Prager, J.: This is a mortgage foreclosure action in which the plaintiff, Tip Top Credit Union of Hillsboro, Kansas, sought personal judgments on various notes and the foreclosure of a number of mortgages on farmland owned by a father and two sons. The defendant, Joseph A. Lies, is the father of the defendants, Joseph N. Lies and William B. Lies. The basic issues in the case were concerned with which defendants were personally

liable on particular notes and what land secured particular mortgages.

With one exception, the facts were undisputed and were essentially as follows: Prior to 1968 the father, Joseph A. Lies, acquired approximately 134 acres of land upon which he operated a small dairy farm before his retirement. The sons then took over the operations of the dairy business. On August 1, 1968, the father and sons entered into an escrow agreement in which the father sold to the sons 40 acres of farmland in Sedgwick County, which property will be referred to in this opinion as the home place. The total price to be paid by the sons to the father under the escrow agreement was $24,000 of which $4,000 was to be paid in cash to the father. The balance of $20,000 was the unpaid amount owing on a real estate mortgage held by the Equitable Life Assurance Society which the buyers agreed to assume and pay. A warranty deed was executed and placed in escrow with a bank in Colwich. The executed agreement contained the following restrictions:

"8. NON-ASSIGNMENT: The Buyer agrees that they will not assign this contract, nor any interest in said real property described herein without the prior written consent of the Seller. It is mutually agreed between Seller and Buyer that the real estate herein described has been owned by the Seller and his ancestors for more than two generations, and in the event a sale is determined advisable by Buyer, the Seller reserves the right to negotiate a sale with Buyer with other members of Seller's family. In the event that no sale is possible to another member of Seller's family, he agrees to not unreasonably withhold his consent to assignment to a third non-family party.

"9. TERMINATION: It is agreed that time is of the essence of this contract, and in the event of the breach of any of the covenants and agreements herein contained by Buyer, or in the event of default by the Buyer in making any of the payments hereunder agreed to be made, including payments due to the first mortgage holder, such default continuing for a period not exceeding sixty (60) days, then in that event the Seller at his election may declare this contract terminated and all rights of the Buyer hereunder shall thereupon cease, and any and all payments made by Buyer hereunder whether to Seller or to the first mortgage holder, shall be retained by the Seller as liquidated damages and as rent for said real estate during the period of the agreement, and the Seller shall have the right to have said deed cancelled and to commence legal action to recover the possession of said real estate from the Buyer."

Commencing in the latter part of 1972 or early 1973, the sons began borrowing money from the plaintiff, Tip Top Credit Union, under a line of credit arrangement for the purpose of obtaining working capital for the dairy business and for construction of a quonset hut on the home place. The sons with their

wives executed a series of mortgages some of which covered the home place and some of which covered only other lands owned by the sons. On February 12, 1973, the sons and their respective wives executed a mortgage on the home place to Tip Top Credit Union in the amount of $50,000. On April 9, 1975, the sons and their wives executed a mortgage to Tip Top Credit Union covering the home place and other lands in the amount of $100,000.

In June of 1975, things were not going well financially for the sons and, at Tip Top's request, the father and the sons with their respective spouses executed an agreement dated June 30, 1975, which was delivered to Tip Top Credit Union. This agreement provided in pertinent part as follows:

"AGREEMENT

"WHEREAS, JOSEPH A. LIES, a widower, hereinafter called 'Seller', has sold to JOSEPH N. LIES and DORIS C. LIES, husband and wife, and WILLIAM B. LIES and KAREN LIES, husband and wife, hereinafter called 'Buyers', under the terms of a certain installment contract, the following described property situated in the State of Kansas, County of Sedgwick, to-wit:

> "The North 22 acres of the Southwest Quarter and the South 18 acres of the Northwest Quarter of Section 19, Township 26 South, Range 2 West of the 6th Principal Meridian, Sedgwick County, Kansas [The home place].

for the sum of twenty-four thousand and no/100 dollars ($24,000.00) for said real estate contract being dated August 1, 1968; and

"WHEREAS, the buyers propose to obtain a loan from the Tip Top Credit Union, Hillsboro, Kansas, which loan proceeds will be used to improve the property described above, (and/or for operational expenses), and which property will be mortgaged to the Tip Top Credit Union to the extent of the buyers' interest in said contract and improvements made by buyers as security in connection with said loan.

"NOW, THEREFORE, in consideration of the foregoing, the seller agrees that he will not take any action to regain possession of the property except through judicial foreclosure. It is agreed by the seller and buyers that no legal action to rescind the above mentioned contract will be commenced by either of them, their assigns, or their successors in interest, without the consent of Tip Top Credit Union. The seller gives his consent to the buyers to mortgage their interest under the above mentioned real estate contract. In the event that the seller determines that judicial foreclosure under the real estate contract is necessary to protect his interest, it is hereby agreed that the Tip Top Credit Union will be provided thirty (30) days written notice prior to such action; during said 30 days, Tip Top Credit Union may have the option to purchase said contract from seller and pay off the unpaid principal and interest.

"In the event of the assignment of the seller's interest in said contract, the seller agrees to give written notice to the Tip Top Credit Union of said assignment within ten (10) days of such assignment. This agreement shall be binding upon the heirs, successors and assigns of the above named seller and buyers."

On March 11, 1976, the father and the two sons with their wives executed a mortgage in the amount of $78,750 covering tracts of land including the 40-acre home place. All parties agreed that the father signed this mortgage.

On June 29, 1976, a mortgage was executed in the amount of $78,750 which the district court found was signed by the father and the sons with their wives. At the beginning of this litigation, all defendants admitted that the father had signed the instrument, but later they disputed the authenticity of the father's signature. That was the only issue of fact present in the case.

From this point on, the financial situation of the sons in the operation of the dairy farm continued to worsen. On February 26, 1979, the father filed an action in the district court of Sedgwick County to cancel the 1968 escrow agreement covering the home place. Tip Top Credit Union was never given any notice of the suit and was never made a party to the action. On March 30, 1979, the father was granted a judgment by default against the sons and their wives cancelling the 1968 escrow agreement.

On September 5, 1979, Tip Top Credit Union filed the present action in which it sought personal judgments on various notes executed by the defendants and foreclosure of the various mortgages. In addition, Tip Top prayed for an order directing the father, Joseph A. Lies, to convey the home place to Tip Top Credit Union, upon payment or credit given by plaintiff, under the escrow agreement of August 1968. Also, at the time the action was filed, Tip Top Credit Union held a security instrument involving certain personal property of the defendants which issues were resolved in the trial court and are not a part of this appeal. After this action was filed, the sons and their wives took bankruptcy.

After completion of discovery, a pretrial conference was held and, under the pretrial order, the following issues were to be determined by trial to the court:

(1) What rights did the father and the two sons and wives grant to the Tip Top Credit Union by the execution and delivery of the agreement of June 30, 1975?

(2) Whether or not the father, defendant Joseph A. Lies, signed the mortgage dated June 29, 1976.

(3) Whether or not the father, Joseph A. Lies, is estopped from denying his signature on the mortgage of June 29, 1976.

The case was tried to the court on these issues, and, on October 13, 1982, the court entered its findings of fact and conclusions of law and judgment in favor of plaintiff, Tip Top Credit Union.

The district court, in its judgment, ruled on the various issues which had been submitted to it for determination. The court construed the agreement signed by the father and the two sons and their wives dated June 30, 1975, and, in substance, found (1) that it was the intent of all of the parties to the agreement to allow the sons to further extend a line of credit with Tip Top by using the home place as additional security for loans made by Tip Top to the sons; (2) that Tip Top Credit Union, by virtue of the agreement, received the right to secure its loans to the sons by the use of the 40-acre home place; and (3) that Tip Top was entitled to foreclosure of its mortgage of June 29, 1976, subject to the existing mortgage in favor of Equitable Life Assurance Society and the right of redemption in the father. The trial court then held that that part of the agreement which gave Tip Top Credit Union the option to purchase the 1968 escrow contract from the seller (the father) and pay off the unpaid principal and interest was invalid for the reason that, as a matter of law, a credit union does not have the power under the Kansas statutes to purchase real property under the facts presented in the case.

As to the second issue, the trial court found that the mortgage of June 29, 1976, was executed by the father, Joseph A. Lies, and that he was bound thereby. The court then proceeded to enter a personal judgment against the father for the principal amount due plus interest on the note dated March 11, 1976, and an additional judgment for the principal amount due plus interest on the note executed June 29, 1976. This judgment was also ordered to be a judgment *in rem* as to the interest of the sons and their wives in the property. The court ordered foreclosure of the various real estate mortgages on the lands covered by each mortgage. It was ordered that the 40-acre home place and additional property immediately surrounding the home place be sold in a separate sale as one tract, and that all other lands covered by the various mortgages be sold at a separate sale. The father, Joseph A. Lies, took an appeal, and plaintiff, Tip Top, filed a cross-appeal.

On appeal, the defendant father first complains that the trial court erred in failing to state the controlling facts and legal

principles in a manner sufficient to apprise the parties as to the reasons for the result reached, as required by K.S.A. 60-252(a) and Supreme Court Rule 165 (232 Kan. clii). We find no merit to this contention. The record discloses that the trial court's memorandum opinion and journal entry addressed each of the issues submitted to it for decision and adequately set forth the facts and legal principles in support of the judgments which were entered.

Defendant next contends that the finding of the trial court that the father, Joseph A. Lies, signed the mortgage dated June 29, 1976, was not supported by substantial competent evidence. We have considered the record and concluded that there is substantial competent evidence which supports the finding of the trial court. The court had before it numerous documents which contained the admitted signature of the father, Joseph A. Lies, as well as the original of the June 29, 1976, agreement. In his testimony, Joseph A. Lies did not state categorically that the signature was not his. His testimony was confused and somewhat unresponsive. Further he first admitted in his Answer to Request for Admissions that his signature was genuine. The court subsequently allowed him to withdraw this admission. The two sons also during discovery admitted that the signature of the father on the document was genuine. Although there was evidence presented by the defendants tending to show that it was not the father's signature, the evidentiary record shows a bona fide factual dispute which the trial court resolved by finding that the father had signed the mortgage. It is not the function of an appellate court to retry that issue of fact, and the trial court's finding of fact must stand on this appeal.

The defendant next maintains that the trial court erred in finding the mortgages dated March 11, 1976, and June 29, 1976, to be cumulative in nature. This again was a fact issue which the trial court resolved in favor of the plaintiff. The officers of the Tip Top Credit Union testified, without equivocation, that the mortgages were cumulative in amount. The trial court properly determined that issue on the basis of substantial competent evidence.

The defendant contends that the trial court erred in construing the June 30, 1975, agreement as a security device to secure the payment of loans to the sons, Joseph N. Lies and William B. Lies, by use of the property of Joseph A. Lies. We find no error in the

ruling of the trial court. The evidence clearly showed that the two sons had purchased the 40-acre home place from their father, Joseph A. Lies, pursuant to the escrow agreement of 1968 which is set forth above. It is clear that, under the terms of the agreement, the sons were the equitable owners of the property, subject to the right of the father to collect the $24,000 purchase price including payment of the first mortgage held by Equitable Life Assurance Society.

In *Fuqua v. Hanson*, 222 Kan. 653, 567 P.2d 862 (1977), it was held in syllabus ¶ 1:

"The form of an agreement by which security is given for a debt is unimportant. If the purpose and intention behind a transaction is to secure a debt, equity will consider the substance of the transaction and give effect to that purpose and intention. A court sitting in equity is not governed by the strict rules of law in determining whether a mortgage has been created. The lien follows if the evidence discloses an intent to charge real property as a security for an obligation."

In *Fuqua,* it was held that a quitclaim deed was an equitable mortgage and that it was proper for the court to decree foreclosure for nonpayment of the debt, subject to a right of redemption. It is clear to us that the escrow agreement of August 1, 1968, vested in the sons the equitable title to the property subject to the right of the father to secure payment of the agreed purchase price.

The trial court correctly held that the June 30, 1975, agreement, signed by the father and the sons and their wives, by its terms recognized the sons as buyers under the August 1968, escrow agreement and that they were the equitable owners of the property. By that agreement, the father unequivocally agreed that he would not take any action to regain possession of the property except through judicial foreclosure and that no equitable action would be taken to rescind the contract. The Tip Top Credit Union relied upon this agreement by extending further credit to the sons. The father violated that agreement by filing the action against the sons in February 1979, to cancel the escrow agreement. The trial court properly held that Tip Top Credit Union's rights under the June 1975, contract were not adversely affected by that action, since Tip Top Credit Union was not notified nor made a party to the action. The trial court did not err in holding that the June 30, 1975, agreement was a security device to secure payment of loans made by Tip Top

Credit Union to the sons by use of the 40-acre home place as collateral.

The final point raised by defendant, Joseph A. Lies, is that the trial court erred in its decree for foreclosure and sale of the land, because it subjected the interest of Joseph A. Lies to judgments having no connection with him and failed to accord Joseph A. Lies the priority in application of the sale proceeds which should belong to a guarantor. As noted above, the court ordered a separate foreclosure sale of the tract of land which was the subject of the real estate mortgage dated March 11, 1976, and of the real estate mortgage dated June 29, 1976, both of which included the 40-acre home place. These mortgages secured the personal judgment against Joseph A. Lies and the *in rem* judgment against the two sons and their spouses who, as noted above, had taken bankruptcy. We find no error in this order of the court. Also it should be noted that defendant Joseph A. Lies did not raise this issue at the trial court level and apparently had no objection as to the manner in which the land was to be sold on foreclosure.

The plaintiff, Tip Top Credit Union, filed a cross-appeal raising the sole issue that the trial court erred in holding invalid that portion of the June 30, 1975, contract which gave Tip Top the option to purchase the father's interest in the 40-acre home place by paying off the unpaid principal and interest due under the 1968 escrow agreement. The trial court raised this issue on its own motion, holding that Tip Top Credit Union did not have the power under the Kansas statutes to purchase real property, and therefore, the option to purchase provided for in the June 1975, contract was subject to the defense of ultra vires. The district court noted that Tip Top was a credit union, a creature of statute, and that its powers were limited to those set out in K.S.A. Chapter 17, Article 22. The trial court concluded that the purchase of real property by a credit union was restricted by K.S.A. 17-2226 which stated, in substance, that credit unions may purchase real estate and improvements thereon *for their use and occupancy*. The trial court reasoned that, since Tip Top Credit Union had made no showing that it wanted to purchase the father's interest in the 40-acre home place for the purpose of providing it a place for its use and occupancy, it had no power to purchase the property. The trial court erred in reaching that

conclusion. The statute on which the court relied, K.S.A. 17-2226, was amended by the 1982 legislature effective July 1, 1982, which was prior to the time this case was decided in the district court. The amended statute, K.S.A. 1983 Supp. 17-2226, provides in substance that a credit union may *acquire*, lease, hold, assign, pledge, sell or otherwise dispose of *property*, either in whole or in part *necessary* or *incidental to its operations and purposes*. Here the plaintiff as a credit union made loans to the father and sons secured by various real estate mortgages on lands including the 40-acre home place. By the June 30, 1975, contract Tip Top Credit Union was granted the right to purchase the interest of the father, Joseph A. Lies, under the August 1968, escrow agreement as a means of paying off a prior lien, thus enabling the credit union to protect its second mortgage on the property. In our judgment, Tip Top Credit Union clearly had the right to take such action. We hold that the trial court erred in holding invalid that portion of the June 30, 1975, contract which gave Tip Top Credit Union the option to purchase the father's interest in the home place by paying off or giving the father credit for the principal and interest owing under the August 1968, escrow agreement.

The judgment of the district court is affirmed on the appeal and is reversed on the cross-appeal. The case is remanded to the district court for further proceedings in accordance with this opinion.