[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12931
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 7, 2011
JOHN LEY
CLERK

D. C. Docket No. 6:06-cv-01703-PCF-KRS

ALAN HOROWITCH,

Plaintiff – Appellee,

versus

DIAMOND AIRCRAFT INDUSTRIES, INC., a foreign corporation,

Defendant – Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 7, 2011)

Before CARNES, ANDERSON, and FARRIS,[*] Circuit Judges.

ANDERSON, Circuit Judge:

In this diversity case, we certify four questions to the Florida Supreme Court,

_____

[*]    Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

seeking guidance as to the application of Florida's offer of judgment statute, Fla. Stat. § 768.79, Florida Rule of Civil Procedure 1.442, and the fee-shifting provision of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.2105.

First, we ask whether an offer of judgment may be viable when it purports to settle "all claims," even though it does not explicitly "state whether the proposal includes attorneys' fees and whether attorneys' fees are part of the legal claim" as required by Rule 1.442(c)(2)(F). Second, we ask whether the offer of judgment statute, which applies in "any civil action for damages" but generally does not apply to a case seeking both damages and non-monetary relief, applies to a lawsuit seeking damages or, in the alternative, specific performance. Third, we ask whether the FDUTPA's fee-shifting provision applies to an action with the following procedural history: the plaintiff filed an action alleging a FDUTPA claim and prosecuted that claim for seven months; the district court ruled at summary judgment that he could not pursue the FDUTPA claim because Florida law did not apply, but allowed him to prosecute the action under Arizona's unfair trade practices law instead; then he lost on the Arizona unfair trade practices claim at trial. Finally, if the FDUTPA's fee-shifting provision does apply, we ask whether it applies only to fees incurred during the seven months before the plaintiff's

FDUTPA claim was defeated at summary judgment, or also to fees incurred during the subsequent litigation.

We certify these questions because we are unable to find definitive answers in clearly established Florida law as set forth in case law or statutes. "Where there is doubt in the interpretation of state law, a federal court may certify the question to the state supreme court to avoid making unnecessary Erie guesses and to offer the state court the opportunity to interpret or change existing law." Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc., 632 F.3d 1195, 1197 (11th Cir. 2011) (quoting Tobin v. Mich. Mut. Ins. Co., 398 F.3d 1267, 1274 (11th Cir. 2005) (per curiam)).

I.  FACTS AND PROCEDURAL HISTORY

The Plaintiff, Alan Horowitch, sued the Defendant, Diamond Aircraft Industries ("Diamond"), alleging that he had a contractual right to purchase a D-Jet aircraft for $850,000 but that Diamond refused to sell the aircraft for less than $1,380,000.  In his amended complaint, Horowitch asserted four specific claims arising out of this pricing dispute: (1) specific performance; and, in the alternative, (2) breach of contract; (3) breach of the covenants of good faith and fair dealing;

3

and (4) deceptive trade practices.[1]  Notably, all these claims seek damages; even the specific performance count includes a demand for not only specific performance, but also "damages, costs of this action, interest, and such other relief as this Court deems just and proper."  Amended Complaint at 8, <u>Horowitch v. Diamond Aircraft Indus., Inc.</u>, No. 6:06-cv-01703-PCF-KRS (M.D. Fla. May 27, 2010).

While the deceptive trade practices claim was not captioned as a FDUTPA claim, it is clear that Horowitch pursued it as a FDUTPA claim for the following reasons: (1) the count itself invoked, by section number of the Florida Statutes, the definitions for "consumer" and "consumer transaction" from the FDUTPA; (2) the count demanded attorney's fees, as allowed under the FDUTPA but not under Arizona law, whereas no other count demanded attorney's fees; and (3) Horowitch described his own claim as a FDUTPA claim in his response to Diamond's motion to dismiss.

Diamond moved to dismiss the FDUTPA claim, arguing that the FDUTPA

---

[1]  We construe the amended complaint to have alleged the specific performance claim as being in the alternative to the three claims for money damages.  Even though the complaint is more explicit in this regard with respect to the breach of contract claim, the same intent is amply evident in light of the same damage allegations in the other two claims.  Moreover, this reading is confirmed because Diamond asserts it on appeal, and Horowitch does not contest it.  Thus, for purposes of this case, it is established that Plaintiff's specific performance claim is only in the alternative to the damages claim, not in addition thereto.

did not apply, and that Arizona unfair trade practices law applied instead, because Horowitch was an Arizona resident, Diamond was a corporation with its principal place of business in Ontario, Canada, and the transactions in question took place outside Florida. Horowitch resisted this motion and the court ultimately denied the motion, stating that it could not make a ruling before receiving evidence to establish where the events in the complaint had taken place. At the same time, Horowitch requested that he be allowed to pursue the unfair trade practices claim under the Arizona Consumer Fraud Act if he could not proceed under the FDUTPA.

Both parties then filed for summary judgment and the court entered summary judgment against Horowitch on all claims except on the unfair trade practices claim. With respect to the unfair trade practices claim, the court held that Arizona law applied and that Horowitch no longer could pursue the FDUTPA claim. It allowed him to proceed, instead, with the Arizona Consumer Fraud Act claim as he had requested. After a bench trial, the court ultimately entered judgment in favor of Diamond.

Diamond then moved to recover its attorney's fees and costs on the basis of either of two Florida statutes. First, it claimed attorney's fees under the FDUTPA, arguing that a prevailing party in a FDUTPA suit is entitled to fees regardless of

the reason that the FDUTPA is found not to apply. Second, it claimed attorney's fees under Florida's offer of judgment statute after filing with the court an offer of judgment that Horowitch had refused. Diamond had offered $40,000 "to resolve all claims that were or could have been asserted by Plaintiff against Diamond Aircraft in the Amended Complaint." It is important to note, for purposes of the requirements of the offer of judgment statute, discussed in greater detail below, that Diamond had made this offer of judgment while the specific performance claim was still pending, and that the offer included neither a certificate of service, a specific statement that attorney's fees were included, nor a specification of whether attorney's fees were part of Horowitch's legal claim.

The district court awarded no fees under either statute. It awarded no fees under the FDUTPA because it found that the FDUTPA did not apply and, moreover, because the applicable Arizona unfair trade practices law provided no attorney's fees. It awarded no fees under the offer of judgment statute because it found that a suit for both damages and non-monetary relief—such as specific performance—did not fall under the statute. Diamond now appeals both the FDUTPA and offer of judgment rulings.

II.  THE ERIE FRAMEWORK

As a federal court sitting in diversity jurisdiction, we apply the substantive

law of the forum state, in this case Florida, alongside federal procedural law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); Burger King Corp. v. E-Z Eating, 41 Corp., 572 F.3d 1306, 1313 n.9 (11th Cir. 2009). Under this framework, the disputed provisions of Florida law—Florida's offer of judgment statute; Rule 1.442(c)(2)(F); Rule 1.442(c)(2)(G); and the FDUTPA and its fee-shifting provision—apply only if they are substantive for Erie purposes. Accordingly, we must determine the Erie status of these provisions before applying them to the case at hand.

We make this determination using two tests. If the Florida law is in conflict with a Federal Rule of Civil Procedure, then we apply the test set forth by Hanna v. Plumer, 380 U.S. 460, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965), under which we follow the federal rule so long as it is valid under the Constitution and the Rules Enabling Act. Id., 380 U.S. at 472-74, 85 S. Ct. at 1144-45. If no federal statute or Federal Rule is on point, then we instead apply the "outcome determinative test" set forth by Erie and its progeny, under which we apply the Florida law if its application would be so important to the outcome "that failure to apply it would unfairly discriminate against citizens of the forum State, or be likely to cause a plaintiff to choose the federal court." Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1307 (11th Cir. 2002) (quoting Gasperini v. Ctr. for Humanities, Inc., 518

7

U.S. 415, 428, 116 S. Ct. 2211, 2220, 135 L. Ed. 2d 659 (1996)).

"This circuit has found [Fla. Stat.] § 768.79"—which is the offer of judgment statute—"to be substantive law for Erie purposes." Jones v. United Space Alliance, L.L.C., 494 F.3d 1306, 1309 (11th Cir. 2007). "Under the prior panel precedent rule, we are bound by earlier panel holdings . . . unless and until they are overruled en banc or by the Supreme Court." United States v. Smith, 122 F.3d 1355, 1359 (11th Cir. 1997). Accordingly, we conclude that the offer of judgment statute is substantive as a matter of this Court's precedent.

We also conclude that Florida Rule of Civil Procedure 1.442(c)(2)(F)—which requires an offer of judgment to "state whether the proposal includes attorney's fees and whether attorney's fees are part of the legal claim"—is substantive as a matter of precedent. "[T]he holding of a case is . . . comprised both of the result of the case and 'those portions of the opinion necessary to that result by which we are bound.' " United States v. Kaley, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) (quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 67, 116 S. Ct. 1114, 1129, 134 L. Ed. 2d. 252 (1996)). In a prior diversity case, McMahan v. Toto, 311 F.3d 1077 (11th Cir. 2002), this Court's application of Rule 1.442(c)(2)(F) was necessary to the result of the case: the Court awarded attorney's fees on the basis of the offeror's compliance with Rule 1.442(c)(2)(F) as well as

other requirements of Rule 1.442 and the offer of judgment statute. Id. at 1082-83. The Court could apply Rule 1.442(c)(2)(F) in this manner only by implicitly holding that this provision applied in federal court. Accordingly, Rule 1.442(c)(2)(F) applies in federal court as a matter of precedent.

Moreover, we would conclude that Rule 1.442(c)(2)(F) was substantive even if precedent did not require this result. We would apply the outcome determinative test, described above, because there is no federal statute or Federal Rule on point. Rule 1.442(c)(2)(F) prescribes specific, substantive terms that an offer of judgment must include, and these terms matter to the parties because the inclusion or exclusion of attorney's fees is material to an offeree's ability to evaluate an offer. The outcome determinative test yields the conclusion that it would be unfair not to apply the rule in federal court, and that it is therefore substantive for Erie purposes.

However, we conclude that Rule 1.442(c)(2)(G)—which requires an offer to "include a certificate of service in the form required by rule 1.080(f)"—is procedural for Erie purposes and therefore does not apply in federal court. At the outset, we note that Federal Rule of Civil Procedure 5(d)(1) specifies that "[a]ny paper after the complaint that is required to be served—together with a certificate of service—must be filed within a reasonable time after service." Under the Federal Rule, a party need not certify service until the time of filing, which occurs

after service to the other parties. By contrast, Florida courts have required strict, technical compliance with Rule 1.442(c)(2)(G), invalidating an offer unless it includes a certificate of service at the time it is served on an offeree. See Milton v. Reyes, 22 So. 3d 624 (Fla. 3d DCA 2009). Accordingly, the Florida rules require certification at the time the offer is tendered even though Florida Rule 1.442(d) specifies that the offer "shall not be filed" at that time. In light of the foregoing, we apply the Hanna test because a conflict is apparent between the Federal Rules and the Florida rule: an offer would be valid under the Federal Rules even if it did not include a certificate of service at the time of service on the opposing party, while the same offer would be invalid under Rule 1.442(c)(2)(G).[2] Cf. Hanna, 380 U.S. at 470, 85 S. Ct. at 1143 ("Here, of course, the clash is unavoidable; Rule 4(d) (1) says—implicitly, but with unmistakable clarity—that in-hand service is not required in federal courts.").

Under Hanna, because Federal Rule 5(d)(1) conflicts with Florida Rule 1.442(c)(2)(G), the Florida Rule does not apply in federal court so long as the Federal Rule is valid. We readily conclude that Rule 5(d)(1) is valid under the

---

[2]      Rule 68, which sets forth a federal mechanism for tendering an offer of judgment, further illustrates the conflict between the two sets of procedures. Like Rule 1.442, Rule 68 instructs the parties not to file an offer of judgment with the court at the time of service. Because Rule 68 does not require filing of the offer at the time of service, however, neither Rule 5(d)(1) nor Rule 68 requires the offering party to complete a certificate of service at that time.

Rules Enabling Act and the Constitution, and we therefore hold that Diamond need not comply with Rule 1.442(c)(2)(G). Moreover, Horowitch asserts no lack of compliance with the Federal Rules, and none is apparent to us. Accordingly, Rule 1.442(c)(2)(G) is not applicable in this case and we certify no questions relating to this provision to the Florida Supreme Court.

Finally, we conclude that the FDUTPA and its fee-shifting provision are substantive for Erie purposes. It is plain that the FDUTPA itself applies in federal court, as substantive law, because it creates a cause of action. Furthermore, a statute allowing for the recovery of attorney's fees, like the FDUTPA fee-shifting provision at issue in this case, generally applies in federal court so long as it does not conflict with a valid federal statute or rule. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 259 n.31, 95 S. Ct. 1612, 1622 n.31, 44 L. Ed. 2d 141 (1975) ("[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.") (alteration in original); Schilling v. Belcher, 582 F.2d 995, 1003 (5th Cir. 1978) ("Because this is a diversity case, the validity of the fee award must be tested under Florida law."). We find no conflict between this fee-shifting provision and any federal law.

Accordingly, we conclude that both the FDUTPA and its fee-shifting provision are substantive for Erie purposes.

III.  QUESTIONS FOR CERTIFICATION

A.  Was Diamond's offer of judgment rendered non-viable by Rule 1.442(c)(2)(F)'s requirement that an offer of judgment specify whether attorney's fees are included and whether attorney's fees are part of the legal claim?

The issue here is whether Diamond's offer of judgment, which was intended to "resolve all claims" but made no mention of attorney's fees, was nonetheless viable.  Rule 1.442(c)(2)(F) requires an offer of judgment to

> state whether the proposal includes attorney's fees and whether attorney's fees are part of the legal claim.

Fla. R. Civ. P. 1.442(c)(2)(F).

We faced the same issue when we decided McMahan v. Toto, 311 F.3d 1077 (11th Cir. 2002).  In McMahan, we held that, when an offer was made to resolve "all claims," it encompassed the plaintiffs' demand for attorney's fees, despite the fact that the offer did not explicitly state whether the proposal included attorney's fees.  Id. at 1082.  We therefore rejected the plaintiffs' claim that Rule 1.442(c)(2)(F) barred the application of the offer of judgment statute.  Id.  We found support for this conclusion in two earlier Florida Rule 1.442 cases. First,

12

Unicare Health Facilities Inc. v. Mort, 553 So. 2d 159, 161 (Fla. 1989), held that a plaintiff's acceptance of an offer of judgment made pursuant to Rule 1.442 that made no specific mention of attorney's fees nonetheless precluded that plaintiff from moving for postjudgment attorney's fees because those claims were terminated.  Second, George v. Northcraft 476 So. 2d 758, 759 (Fla. 5th DCA 1985), held that attorney's fees are "encompassed in an offer of judgment made pursuant to Rule 1.442 which fails to mention them specifically or reserve the right to seek them later."[3]

We also found support in an earlier Florida opinion issued outside the context of Rule 1.442.  Liberty Mutual Fire Insurance Co. v. Ramos, 565 So. 2d 798 (Fla. 4th DCA 1990), held that where an offer does not specifically mention attorney's fees, it will be read to include attorney's fees because to hold otherwise would thwart the policy purposes behind a settlement statute by not terminating the litigation.

Our conclusion in McMahan also finds some confirmation in a Florida case

---

[3]     It is important to note, however, that Rule 1.442(c)(2)(F) was not introduced until the Florida Supreme Court's order in In re Amendments to Florida Rules of Civil Procedure, 682 So. 2d 105, 124-26 (Fla. 1996), meaning that Unicare and George were decided under a different version of Rule 1.442 with no explicit requirement that a party state whether attorney's fees were included.

decided after McMahan, Bennett v. American Learning Systems of Boca Delray, Inc., 857 So. 2d 986 (Fla. 4th DCA 2003), which specifically held that a settlement offer need not mention attorney's fees under Rule 1.442(c)(2)(F) if no attorney's fees are claimed in the complaint. However, Bennett is distinguishable because the plaintiffs in both McMahan and the instant case explicitly demanded attorney's fees.

We seek guidance from the Florida Supreme Court on this issue because it may be that, despite our McMahan decision, a different result is indicated by Campbell v. Goldman, 959 So. 2d 223 (Fla. 2007), which strictly construed the offer of judgment statute and Rule 1.442 even with respect to purely technical error. The Campbell court was presented with the argument that an offer of judgment was invalid for failure to specify that the offer was being made under the offer of judgment statute. The Florida Supreme Court noted that the offer of judgment statute itself requires that a settlement offer "state that it is being made pursuant to this section," Fla. Stat. § 768.79(2)(c), and that Rule 1.442(c)(1) also requires that a settlement offer "shall identify the applicable Florida law under which it is being made." Campbell, 959 So. 2d at 226. Significantly, the failure to identify § 768.79 was a purely technical error: at the time of Campbell, § 768.79

14

was the only applicable offer of judgment statute implemented by Rule 1.442, Campbell, 959 So. 2d at 227 (Pariente, J., concurring); the offer of judgment clearly stated that it was being made pursuant to Rule 1.442, id. at 224 (maj. opinion); and the omission created no ambiguities, see id. at 227 (Pariente, J., concurring).  It was clear that a technical error of this type would not prejudice the other party with respect to its ability to evaluate the terms of the offer.  The Florida Supreme Court nonetheless held that fee-shifting was in derogation of the common law, that both the rule and statute must be strictly construed, and that the failure of the offer to identify § 768.79 therefore invalidated the offer.  Id. at 227.

Campbell dealt with a requirement that was present in both the statute and the rule.  Accordingly, it does not directly control a situation like the one in the instant case, in which the requirement is present only in the rule.  However, Campbell relied upon two cases that required strict construction of a requirement present only in the rule; these cases were also decided subsequent to our McMahan decision.  See Lamb v. Matetzschk, 906 So. 2d 1037 (Fla. 2005); Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So. 2d 276 (Fla. 2003).  Both Lamb and Willis Shaw held that an offer of judgment was invalid for failure to strictly comply with Rule 1.442's requirement that a joint proposal "state the amount and terms

15

attributable to each party." There is no comparable requirement in the statute. These cases appear to be distinguishable from Campbell and the instant appeal because the omission in these cases was not a purely technical failing—the attribution of the settlement funds may be material to the parties' evaluation of the settlement offer. See Lamb, 906 So. 2d at 1040 ("Each defendant should be able to settle the suit knowing the extent of his or her financial responsibility."). However, it is possible to read Lamb and Willis Shaw as establishing strict construction even for requirements present only in the rule, and to read Campbell as clarifying that the strict construction principal extends even to purely technical matters. This reading casts some doubt on our earlier McMahan decision.

The foregoing discussion has focused principally on Rule 1.442(c)(2)(F)'s first requirement, that a party "state whether the proposal includes attorney's fees." We now turn briefly to Rule 1.442(c)(2)(F)'s second requirement, that a party state "whether attorneys' fees are part of the legal claim." As Horowitch points out in his brief—albeit with minimal discussion—Diamond's failure to comply with the second requirement may be an additional reason to refuse an award under the offer of judgment statute. We have found no cases discussing this point, and the parties make no relevant arguments. Furthermore, the function of this requirement is not

16

clear to us.

We believe it was clear to Horowitch that acceptance of Diamond's offer would extinguish any claim to attorney's fees, and that Diamond's failure to discuss attorney's fees in the offer was therefore not prejudicial. However, there appears to be a conflict between earlier Florida cases, which hold that an offer of judgment that does not explicitly reference attorney's fees is viable, and more recent cases, which hold that the statute and the rule must be strictly construed even in the face of purely technical requirements. Even though we have found no Florida cases that conclusively state how the offer of judgment statute and Rule 1.442 should be applied in this situation, the recent Campbell decision has cast doubt on our earlier McMahan decision. Accordingly, we respectfully certify to the Florida Supreme Court the following question:

UNDER FLA. STAT. § 768.79 AND RULE 1.442, IS A DEFENDANT'S OFFER OF JUDGMENT VALID IF, IN A CASE IN WHICH THE PLAINTIFF DEMANDS ATTORNEY'S FEES, THE OFFER PURPORTS TO SATISFY ALL CLAIMS BUT FAILS TO SPECIFY WHETHER ATTORNEY'S FEES ARE INCLUDED AND FAILS TO SPECIFY WHETHER ATTORNEY'S FEES ARE PART OF THE LEGAL CLAIM?

B. Was Diamond's offer of judgment rendered non-viable because Horowitch claimed specific performance—a non-monetary remedy—in the alternative to damages?

The offer of judgment statute applies only "[i]n any civil action for damages." Fla. Stat. § 769.79(1). Applying this requirement, Florida intermediate courts have refused to apply the statute in cases in which both money damages and non-monetary relief were sought. In Palm Beach Polo Holdings, Inc. v. Equestrian Club Estates Property Owners Association, Inc., 22 So. 3d 140 (Fla. 4th DCA 2009), a landlocked plaintiff sued for both non-monetary relief, in the form of declaratory and injunctive relief to gain use of a private road by "way of necessity," and monetary relief, in the form of tortious interference damages due to the prior denial of access to the road. The court characterized this case as one that "contained two independent, significant claims, such that it could be characterized only as an action for both damages and non-monetary, declaratory relief." Id. at 143.

The defendant in Palm Beach Polo made an offer of judgment in the amount of $1001 "as complete and final resolution and settlement of all claims." However, the court held that the offer of judgment statute did not apply to this offer. As a

principle of law, it stated that strict construction, as required by <u>Campbell</u>, "should

not allow application of a general offer of settlement, sought to be applied to claims

seeking non-monetary relief as well as actions for damages." <u>Id.</u> at 144.  Applying

this principle to the facts of the case, the court found that:

> In this case, each offer of settlement filed was general, such that it applied to all claims contained within the complaint which, of course, included both a claim for damages and non-economic claims.  Strict construction of the statute leads to the conclusion that when an action seeks non-monetary relief, such as a pure declaration of rights or injunctive relief, then the fact that it <u>also</u> seeks damages does not bring it within the offer of judgment statute.

<u>Id.</u>

Palm Beach Polo further explains its rationale through its discussion of a

second relevant case, <u>Di Paola Beach Terrace Association, Inc.</u>, 718 So. 2d 1275

(Fla. 2d DCA 1998).  <u>Di Paola</u> rejected an offer of judgment in a case in which

both injunctive relief and damages were sought because "the offer was ambiguous

in that it failed to state whether the defendant . . . was agreeing to the entry of

injunctions in addition to the settlement of the plaintiffs' damages claim."  <u>Palm</u>

<u>Beach Polo</u>, 22 So. 3d at 144 (discussing <u>Di Paola</u>); <u>see</u> <u>Di Paola</u>, 718 So. 2d at

1277.  The <u>Palm Beach Polo</u> court found the settlement before it similarly lacking

because "the proposals for settlement did not state whether the association was

19

agreeing to entry of any injunctions." Palm Beach Polo, 22 So. 3d at 145. It went

further to say that:

> If the statute were read to permit a proposal for settlement to apply to a
> case in which there were claims for non-economic relief as well as for
> damages, the offeree would be forced either to accept the proposal and
> continue to litigate the request for injunctive and non-economic relief
> or to give up their non-damage claims. The purposes of section
> 768.79 include the early termination of litigation. A proposal for
> settlement in a case such as this one does not satisfy that purpose, as
> its acceptance would not terminate the litigation nor resolve those
> claims not seeking damages.

Id.

Horowitch argues that Palm Beach Polo and Di Paola stand for the

proposition that, under the strict construction required by Campbell, the offer of

judgment statute cannot apply when a complaint seeks both damages and equitable

relief. By this logic, Horowitch urges, his claim for specific performance, or

alternatively damages, would be beyond the scope of the offer of judgment statute.

To justify this outcome, Horowitch further reasons that it would be impossible to

calculate the monetary value of an equitable remedy won at judgment for purposes

of determining whether the award was 25% less than the judgment offered, as

required to trigger the offer of judgment statute's fee-shifting provision.

Diamond argues that Palm Beach Polo and Di Paola are distinguishable

20

because they involved claims for both equitable relief and money damages. For example, in <u>Palm Beach Polo</u>, the plaintiff sought an injunction to permit future access to the private road, and also sought damages for the past denial of access. By contrast, in the instant case, Horowitch claims equitable relief only in the alternative to money damages. This argument is persuasive to us because, in any case in which the two types of relief are set in the alternative, it is clear that the satisfaction of the claim for money damages would preclude any further litigation on the matter of equitable relief. Addressing the concern underlying <u>Palm Beach Polo</u> and <u>Di Paola</u>, there is no possibility in this case that the litigation would not be terminated by the offer of judgment.

Diamond also argues that the continued workability of the offer of judgment statute counsels in favor of applying the statute to these facts. If a plaintiff could simply "tack on" an equitable claim in the alternative to his claims for damages and thereby preclude the application of the statute, then he could avoid the application of the statute through artful pleading. This risk is particularly acute in a case like this one, in which the equitable claim is so lacking in merit: the jet in question is not a unique good and Horowitch therefore cannot obtain specific performance to force its sale. <u>See</u> Fla. Stat. § 672.716(1) (adopting the Uniform Commercial Code

position that "[s]pecific performance may be decreed where the goods are unique or in other proper circumstances"); George Vining & Sons, Inc. v. Jones, 498 So. 2d 695, 697 (Fla. 5th DCA 1986) ("[S]pecific performance of a contract is limited to those involving a unique subject matter such as an agreement to convey land."); see also Klein v. PepsiCo, Inc., 845 F.2d 76, 80 (4th Cir. 1988) (refusing to award specific performance for the delivery of a jet because, among other reasons, the aircraft was not unique within the meaning of the Virginia Commercial Code).

In light of the lack of controlling Florida law, and because we are in any event certifying the offer of judgment issue discussed above, in Section III.A, we certify the following question:

DOES FLA. STAT. § 768.79 APPLY TO CASES THAT SEEK EQUITABLE RELIEF IN THE ALTERNATIVE TO MONEY DAMAGES; AND, EVEN IF IT DOES NOT GENERALLY APPLY TO SUCH CASES, IS THERE ANY EXCEPTION FOR CIRCUMSTANCES IN WHICH THE CLAIM FOR EQUITABLE RELIEF IS SERIOUSLY LACKING IN MERIT?

C. Does the FDUTPA fee-shifting provision apply in a case in which a plaintiff's FDUTPA claim fails because the law of another jurisdiction governs the issue?

Unless Diamond is entitled to recover its full attorney's fees pursuant to the

offer of judgment statute, it will be necessary to address its claim for attorney's fees under the FDUTPA.

The FDUTPA states, in relevant part, that:

In any civil litigation resulting from an act or practice involving a violation of this part, . . . the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.

Fla. Stat. § 501.2105(1). Florida's courts have interpreted this fee-shifting provision to apply under circumstances in which a plaintiff has sued under the FDUTPA and lost, even when the plaintiff has lost because the court concluded that the alleged violation was not one that actually fell under the statute, notwithstanding the fact that such an act is by definition not "a violation of this part" in the most literal sense. See Rustic Village v. Friedman, 417 So. 2d 305, 305 (Fla. 3d DCA 1982) ("[W]here a plaintiff brings a claim under the Act, an attorney's fee is to be allowed a prevailing defendant even though the trial judge holds that the action is not one contemplated by the Act."); see also M.G.B. Homes, Inc. v. Ameron Homes, Inc., 30 F.3d 113, 115 (11th Cir. 1994) (awarding attorney's fees to a prevailing defendant in a suit between competitors after finding that the FDUTPA does not apply to suits between competitors, stating that if it were Florida law to deny attorney's fees under these circumstances then "no

23

prevailing defendant would ever be entitled to attorney's fees under the DTPA, for by definition defendants prevail by demonstrating the inapplicability of the DTPA to their actions"); Brown v. Gardens by the Sea South Condominium Assoc., 424 So. 2d 181, 184 (Fla. 4th DCA 1983) (awarding attorney's fees to a prevailing defendant even though the transaction did not qualify as a "consumer transaction" and the FDUTPA therefore did not apply).[4]

However, the instant case is distinguishable—in none of these cases was the FDUTPA found not to apply because the law of a foreign jurisdiction governed the unfair trade practices claim. Moreover, Rustic Village recognized, in dicta, that there might be a distinction if the FDUTPA did not actually "apply":

> The plaintiff [argues] that once the trial court had found the Act "inapplicable," it could not then utilize the Act for the purpose of granting the prevailing defendant an attorney's fee. It is apparent that

---

[4] Diamond cites to specific language in Rustic Village, 417 So. 2d at 306 ("The plaintiff, having invoked the Act, is liable for an attorney's fee because he did not prevail."), and Leitman v. Boone, 439 So. 2d 318, 322 (Fla. 3d DCA) ("[B]y invoking an existing and valid statute which calls for an award of attorneys' fees, one may subject himself to having attorneys' fees asserted against him if he does not prevail."), to argue that a plaintiff is liable for attorney's fees whenever he "invokes" the FDUTPA and then loses the case. However, this language does not dispose of the instant case because neither of those cases presents a situation in which the FDUTPA does not apply because another state's substantive law governs. Moreover, Leitman carries little weight: it spoke on the issue only in dicta, see id. (finding that attorney fees were improper as "a consequence of the non-existence of a contract," notwithstanding the plaintiff's invocation of the FDUTPA), and the Florida Supreme Court subsequently disagreed with Leitman on other grounds in Gibson v. Courtois, 539 So. 2d 459 (Fla. 1989). Accordingly, we conclude that no Florida court has held that the mere invocation of the FDUTPA is sufficient to trigger its fee-shifting provision.

24

this is not the case since the Act was applied in the action. It is simply that after being applied, it did not produce a remedy for this plaintiff.

Because the instant case is distinguishable, no Florida cases provide clear guidance on whether the FDUTPA should apply on the facts of this case.

We nonetheless find some guidance on how to proceed in this situation by examining how the offer of judgment statute has been applied in disputes governed by the substantive law of other states. In BDO Seidman v. British Car Auctions, 802 So. 2d 366 (Fla. 4th DCA 2001), a Florida court was presented with the question of whether it was obliged to apply a choice of law analysis to determine whether the offer of judgment statute would apply in a case brought in Florida but governed by Tennessee law. It ultimately held that the legislature was clear in stating that the statute applies to "any" civil action for damages filed in a Florida court, that it was unnecessary to conduct a choice of law analysis in the face of such a clear legislative statement, and that the offer of judgment statute therefore applied. Id. at 368-69. In a concurrence, Judge Gross asserted that the statute would have applied even under choice of law analysis, because the statute is a procedural mechanism for choice of law purposes and Florida procedural law still applies even when another state's substantive law governs. Id. at 370 (Gross., J., concurring). On the basis of BDO Seidman, this Court has also explicitly held that

25

the offer of judgment statute "is applicable to cases . . . that are tried in the State of Florida even though the substantive law that governs that case is that of another state." McMahan v. Toto, 311 F.3d 1077, 1081 (11th Cir. 2002). The application of the offer of judgment statute to these cases provides support for the argument that Florida courts might likewise apply the fee-shifting provisions of the FDUTPA under circumstances in which the substantive law of another state applied so long as a plaintiff nonetheless triggered the procedural provisions of the FDUTPA by suing under it.[5]

Applying the fee-shifting provision in these circumstances also advances Florida's interest in preventing unfair trade practices claims from being brought needlessly. As one Florida court has recognized:

> [I]t is not uncommon for litigants to inject claims of fraud and deceptive trade practices into a contractual dispute. This tactic complicates a lawsuit, raises the stakes, and increases the litigation expenses. We have encountered few cases where such claims were successful.

Mandel v. Decorator's Mart, Inc. of Deerfield Beach, 965 So. 2d 311, 313 n.1 (Fla.

---

[5]     A law may be substantive for Erie purposes (meaning it applies in federal court) yet procedural for other purposes, such as a choice of law analysis. Sun Oil Co. v. Wortman, 486 U.S. 716, 726-28, 108 S. Ct. 2117, 2124-25, 100 L. Ed. 2d 743 (1988); BDO Seidman, 802 So. 2d at 370-71 (Gross, J., concurring). Accordingly, the prospect that the FDUTPA's fee-shifting provision might be thought of as procedural for choice of law purposes does not place at risk its status as substantive for Erie purposes.

4th DCA 2007). A plaintiff introduces the same complications, and the same strain on the Florida court system, whenever he raises a FDUTPA claim, regardless of which state's substantive law is ultimately found to govern. Accordingly, it is plausible that the Florida courts would wish to curb this behavior by holding such a plaintiff accountable under the fee-shifting provision.

It appears to us that Florida law would likely treat the FDUTPA's fee-shifting provision much like it would the offer of judgment statute, applying it even in actions in which the law of another state was ultimately found to govern the substantive claims. However, because we are in any event certifying questions related to the offer of judgment statute, because there is room to distinguish the FDUTPA's fee-shifting provision and the offer of judgment statute, and because we have found no Florida cases directly addressing whether the FDUTPA would apply to circumstances like these, we certify the following question:

DOES FLA. STAT. § 501.2105 ENTITLE A PREVAILING DEFENDANT TO AN ATTORNEY'S FEE AWARD IN A CASE IN WHICH A PLAINTIFF BRINGS AN UNFAIR TRADE PRACTICES CLAIM UNDER THE FDUTPA, BUT THE DISTRICT COURT DECIDES THAT THE SUBSTANTIVE LAW OF A DIFFERENT STATE GOVERNS THE UNFAIR TRADE PRACTICES

27

CLAIM, AND THE DEFENDANT ULTIMATELY PREVAILS ON THAT CLAIM?

D. Would the FDUTPA fee-shifting provision support an award of fees for the entire litigation, or only for the seven-month period before the court held that Arizona law, rather than Florida law, applied?

If the FDUTPA fee-shifting provision applies to this case, we are left with the question of whether it applies to the entire case or only to the seven months between the time Horowitch raised his FDUTPA claim and the time the district court found that he could not proceed under the FDUTPA.

One plausible reading of the statute's requirement, that the "civil litigation result[] from an act or practice involving a violation of [the FDUTPA]," is that the statute applies only to litigation in which a plaintiff at least alleges a violation of the FDUTPA. At the point that Horowitch ceased litigating his FDUTPA claim to pursue an Arizona Consumer Fraud Act claim, he was no longer asserting a violation of the FDUTPA, so perhaps the fee-shifting provision should not apply from that point onward. On the other hand, the FDUTPA does not award fees until after "exhaustion of all appeals." Because Horowitch could have appealed the district court's decision that the FDUTPA did not apply, and because any such

28

appeal would have taken place after the seven month period under discussion, it is also possible that the fee-shifting provision would cover the entire case.

Florida's cases addressing the applicability of the FDUTPA fee-shifting provision do not reach this issue. In Rustic Village, Brown, and MGB, discussed above, no claims were left unresolved after the disposal of the FDUTPA claim. Accordingly, there was no period of litigation during which only non-FDUTPA claims were at issue.

Another set of Florida cases establishes that an attorney may recover for time spent defending claims related to a FDUTPA claim, but these cases are also of little help because none of them reaches this problem. These cases tell us that:

> [I]n actions containing a deceptive trade practices count and one or more alternative theories of recovery, all based on the same transaction, no allocation of attorney's services need be made except to the extent counsel admits that a portion of the services was totally unrelated to the 501 claim or it is shown that the service related to issues, such as punitive damages, which were clearly beyond the scope of a 501 proceeding.

Heindel v. Southside Chrysler-Plymouth, Inc., 476 So. 2d 266, 272 (Fla. 1st DCA 1985); see also LaFerney v. Scott Smith Oldsmobile, Inc., 410 So. 2d 534, 536 (Fla. 5th DCA 1982) ("[T]here was really only one transaction or set of facts which gave rise to all five 'theories' in the complaint . . . . As appellant points out, proof

29

of a deceptive trade practice under Chapter 501 may well, and frequently does, involve proof of breach of contract and fraud or misrepresentation.").  However, these cases are distinguishable because none of these cases involve circumstances in which the case was still live after the FDUTPA claim was disposed of.  The immediate question is not whether Horowitch's other claims were cognizable as alternative claims arising out of the same consumer transaction as the FDUTPA claim, but whether the FDUTPA fee-shifting provisions applied after the FDUTPA claim had been extinguished.

Because there is little guidance in Florida law on the question of whether the FDUTPA fee-shifting provision extends to the period after which the FDUTPA claim was eliminated, and because we are already certifying the question of whether the FDUTPA applies to this case at all, we certify the following question: IF FLA. STAT. § 501.2105 APPLIES UNDER THE CIRCUMSTANCES DESCRIBED IN THE PREVIOUS QUESTION, DOES IT APPLY ONLY TO THE PERIOD OF LITIGATION UP TO THE POINT THAT THE DISTRICT COURT HELD THAT THE PLAINTIFF COULD NOT PURSUE THE FDUTPA CLAIM BECAUSE FLORIDA LAW DID NOT APPLY TO HIS UNFAIR TRADE PRACTICES CLAIM, OR DOES IT APPLY TO THE ENTIRETY OF

30

THE LITIGATION?

IV.  CONCLUSION

"The phrasing of these [four] questions is not intended to limit the Florida Supreme Court's consideration of the issues involved or the manner in which it gives its answers." <u>MCI WorldCom Network Servs. v. Mastec, Inc.</u>, 370 F.3d 1074, 1079 (11th Cir. 2004).  In order to assist in the resolution of these questions, the record in this case and the briefs of the parties shall be transmitted to the Florida Supreme Court.

QUESTIONS CERTIFIED.