[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10588
Non-Argument Calendar

_____

D.C. Docket No. 0:11-cv-61434-WJZ

PAUL DANIEC,

Plaintiff-Appellee,

versus

BOATARAMA, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 21, 2014)

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Boatarama, Inc. (Boatarama) appeals the district court's denial of its motion and renewed motion for judgment as a matter of law in an action for breach of contract and unjust enrichment brought by Paul Daniec.  Boatarama alleges that Daniec failed to present sufficient competent evidence from which the jury could calculate damages with reasonable certainty.  For the reasons stated below, we affirm.

## I.

The present dispute stems from a 2007 agreement between Daniec and Boatarama for the purchase of a 56 foot Navigator Express Cruiser Yacht (the Yacht).  Briefly stated, after unsuccessful attempts to sell the Yacht through its own website and at boat shows, Boatarama listed the vessel for sale in June 2007 on the online auction site, eBay, Inc. (eBay).  In the online listing, Boatarama indicated that it was selling the Yacht "to mitigate damages."

On June 10, 2007, Daniec submitted the winning bid of $376,099.  Pursuant to eBay's terms and conditions, "[a] 20 percent down-payment is due at the close of auction in the form of cashier's check or money order or wired funds with the balance due in ten days."  Because Daniec was in Poland at the close of the auction, Boatarama agreed to extend the deadline for receipt of the deposit to June 12.  The parties subsequently entered into a written contract on June 12 for the sale of the Yacht for $376,469, which included a deposit of $75,000 due that same day.

2

After Daniec failed to timely tender the $75,000 deposit, Boatarama sent Daniec an e-mail on June 13, informing him that he was in default. It also sent out second-chance offers to other participants in the eBay auction. On June 14, Daniec's bank wired the $75,000 deposit to Boatarama. Later that same day Daniec flew to Florida to inspect the Yacht and the parties agreed that Daniec would pay the remaining balance by June 22. Daniec then learned that Boatarama did not have clear title, as represented in the eBay auction, because GE Corporation (GE) had a lien on the Yacht. Daniec negotiated with Boatarama to pay an additional $25,000 to GE to clear the lien in exchange for more time to complete the purchase. Despite repeated attempts to contact Boatarama, Daniec never received the necessary wiring instructions for GE.

On June 28, Daniec learned that the Yacht had been sold to another buyer for $350,000. On June 30, Daniec e-mailed Wilfred Bost, Boatarama's owner and president, and demanded the return of his $75,000 deposit. That same day, a Boatarama employee responded, "Please do not write us anymore, YOU DEFAULTED UNDER THE TERMS AND CONDITIONS OF E-BAY . . . ."

Daniec filed suit against Boatarama in June 2011, alleging breach of contract and unjust enrichment. Daniec sought compensatory damages equal to the fair market value of the Yacht less the contract price, arguing that he did not receive the benefit of the bargain he contracted for with Boatarama. In its answer,

3

Boatarama classified the sale of the Yacht to the other buyer as necessary to mitigate damages incurred from Daniec's alleged breach of contract.

At trial, Daniec opined that the Yacht was worth "anywhere between 800,000 and a million dollars." In response, Bost testified that the Yacht was sold in 2007 for $350,000 on eBay, reflecting the true market value of the vessel. At the close of Daniec's case-in-chief, and again at the close of all evidence, Boatarama moved for judgment as a matter of law under Fed.R.Civ.P. 50(a), arguing that Daniec had failed to present sufficient evidence of the fair market value of the Yacht at the time of the breach in order for the jury to calculate his benefit-of-the-bargain damages. The district court denied Boatarama's motions. The jury found in favor of Daniec and awarded damages of $225,000. Boatarama then filed a renewed motion for judgment as a matter of law on the same ground, which the court also denied. The instant appeal followed.

## II.

We review *de novo* the district court's denial of a motion and renewed motion for judgment as a matter of law. *Etienne v. Inter-Cnty. Sec. Corp.*, 173 F.3d 1372, 1374 (11th Cir. 1999). "If the facts and inferences overwhelmingly favor one party, such that reasonable people could only arrive at one verdict, then the motion should have been granted." *Id.* As for credibility determinations, "[i]t is the jury's task—not ours—to weigh conflicting evidence and inferences, and

4

determine the credibility of witnesses." *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1154-55 (11th Cir. 2002) (quotation marks omitted).

### III.

On appeal, Boatarama does not challenge the jury's finding that a breach occurred. Rather, it argues that the district court erred by denying its motion and renewed motion for judgment as a matter of law because Daniec failed to present sufficient competent evidence from which the jury could ascertain the market value of the Yacht in order to calculate damages.[1]

Contract law is designed to protect the expectations of the contracting parties. *MCA Television Ltd. v. Public Interest Corp.*, 171 F.3d 1265, 1271 (11th Cir. 1999). "When a contract is breached, an injured party can look to the legal system for help in achieving the position he or she would have occupied upon the performance of the promise—that is, for his or her 'expectation interest,' otherwise known as 'the benefit of the bargain.'" *See id.* The parties agree that Florida law governs the instant dispute grounded in diversity jurisdiction. *See Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011) ("As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum

---

[1] Contrary to Daniec's contention, Boatarama preserved its claim concerning damages. In moving for judgment as a matter of law at trial, Boatarama argued that Daniec had failed to prove damages with "a reasonable degree of certainty." *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004) ("This Court repeatedly has made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury.").

state, in this case Florida, alongside federal procedural law."). Under Florida law, "[w]here the breach consists in the failure of the seller to deliver the goods, the measure of damages is ordinarily the difference between the contract price and the market price of the goods at the time and place of delivery." *Briggs v. Mann*, 116 So. 2, 3 (Fla. 1928). Damages for breach of contract are to be measured from the date of the breach. *CIMA Capital Partners, LLC v. PH Cellular, Inc.*, 69 So.3d 293, 294 (Fla. Dist. Ct. App. 2010).

Boatarama argues that Daniec failed to present any evidence, absent his own speculative opinion, as to the Yacht's value. It contends that Bost's testimony regarding the sales history of the yacht from 2004 to 2007 did not constitute sufficient evidence of the Yacht's value at the time of the breach. We disagree. The jury's award of $225,000 in damages—reflecting the difference between the contract price and an assigned value of approximately $600,000 for the Yacht—is supported by the evidence. At trial, Bost described that he had been in the boating industry for over 55 years. Bost testified that Boatarama previously had offered the Yacht for sale at various boat shows ranging from $800,000 to over $1 million. *See Horn v. Corkland Corp.*, 518 So.2d 418, 420 (Fla. Dist. Ct. App. 1988) (noting that "under Florida law an owner of property can testify as to his opinion of the value of the property"); *see also Reliance Ins. Co. v. Pro-tech Conditioning & Heating*, 866 So.2d 700, 702 (Fla. Dist. Ct. App. 2003) ("The rule allowing an

6

owner to testify regarding the value of his property is based on the owner's presumed familiarity with the characteristics of the property, his knowledge or acquaintance with its uses and purposes, and his experience in dealing with it.").

At trial, Bost opined that the vessel was valued in excess of $400,000 at the time of the auction in 2007.  He also described that: (1) Boatarama paid its lienholder $598,400 for the Yacht; (2) the wholesale price for the Yacht was $600,000, and Boatarama typically sold boats in excess of their retail prices; (3) Boatarama had entered into a purchase agreement with a potential buyer for $600,000 in late 2005/early 2006, but the deal fell through; (4) Boatarama represented in the eBay auction that the Yacht always had been shown at a boat show special of $882,000; and (5) a similar used boat had sold for $695,000. Based on these estimates, the jury's award was not based on an error of law, nor was it against the weight and preponderance of the evidence.  S*ee Myers v. TooJay's Mgmt. Corp.*, 640 F.3d 1278, 1287 (11th Cir. 2011) ("[A] motion for judgment as a matter of law may be granted only if after examining all evidence in a light most favorable to the non-moving party we determine there is no legally sufficient evidentiary basis for a reasonable jury to find for that party.") (quotation marks omitted)).

Boatarama maintains that the fair market value of the Yacht should have been set at $350,000, the amount it ultimately sold for to a second-chance buyer on

eBay.  But the final sale price does not necessarily constitute a reliable indicator of the Yacht's fair market value.  At trial, Bost testified that the transaction represented a "firesale" and that he was "in a hurry to sell the [Yacht] for far less than it was worth" because Boatarama needed to offload the vessel from its inventory.  *See United States v. Cartwright*, 411 U.S. 546, 551 (1973) (explaining that fair market value is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts."). Additionally, the eBay advertisement for the sale specifically noted that the sale was being orchestrated "to mitigate damages," thus indicating that Boatarama was not a "willing seller" and the $350,000 sale price did not equate with the fair market value of the Yacht.  *Id.*; *see also ITT Cmty. Dev. Corp. v. Seay*, 347 So.2d 1024, 1027 (Fla. 1977) (holding that public auction did not amount to a fair valuation where the seller's ability to renege allowed the seller to undervalue the property and the prevailing uncertainty led to disinterested buyers).

In sum, the evidence provided a sufficient legal basis for the jury's award. Accordingly, the district court properly denied Boatarama's motion and renewed motion for judgment as a matter of law.

**AFFIRMED.**