[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12082
Non-Argument Calendar
_____

D.C. Docket No. 6:16-cv-00226-GKS-GJK

PAULA C. PEREZ-BRITO,
CARLOS A. BRITO,

Plaintiffs - Appellants,

versus

WILLIAMS-SONOMA STORES, INC.,
d.b.a. Pottery Barn Kids,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 1, 2018)

Before MARTIN, JILL PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Paula C. Perez-Brito and her husband bring negligence and loss-of-consortium claims for Perez-Brito's slip and fall at a Pottery Barn Kids operated by Defendant Williams-Sonoma Stores, Inc.  After plaintiffs' presentation of their case in chief, the district court granted judgment as a matter of law in favor of Williams-Sonoma.  This appeal followed.  After a careful review of the record, we reverse the district court.

## I.

Viewed in the light most favorable to plaintiffs, the evidence at trial showed as follows.

The Mall at Millennia is an Orlando shopping mall with a Pottery Barn Kids among other stores.  This Pottery Barn Kids has high traffic volume, including many children who are prone to drop things on the floor.  After leaving work at another store in the mall, Paula Perez-Brito went to Pottery Barn Kids to buy bed sheets for her sons.  Jennifer McGlashan, an associate store manager, helped Perez-Brito shop for bedding.

While helping Perez-Brito, McGlashan discovered liquid spilled directly in front of the cash-wrap, a u-shaped counter in the center of the store with two cash registers on each side.  When she saw the spill, McGlashan believed that Perez-Brito was behind her.  She walked around the cash-wrap counter to find paper towels to clean the spill.  Finding none, she told another employee at the cash

register about the spill and then went to the stockroom on the opposite side of the store from the spill to retrieve paper towels and a bucket. While in the stockroom, McGlashan told assistant store manager Elizabeth Aiello about the spill. Aiello left the stockroom heading for the spill, but before she arrived, a customer told her that another customer (Perez-Brito) had fallen. McGlashan, for her part, was still in the stockroom when she learned by radio that Perez-Brito had fallen. McGlashan testified that "no more than a minute and a half" passed from when she discovered the spill and when she learned that Perez-Brito fell and injured her right knee.

The store's regular practice was for employees to stand over a spill and wait for another employee to help clean it, instead of leaving the spill unattended. Both McGlashan and Aiello testified that after discovering a spill an employee would normally stand at the spill and use their radio to contact another employee to bring cleaning materials. All Pottery Barn Kids employees have radios to communicate with each other at all times, and McGlashan had her radio with her when she discovered the spill. But instead of using her radio on this occasion, McGlashan told a nearby employee about the spill. Without receiving any assurance that this employee would stand by the spill, McGlashan left the cash-wrap and headed to the stockroom.

3

The district court found that the evidence showed that Perez-Brito fell "less than one minute after [McGlashan] had observed the spill."[1]  As a result, the district court granted judgment as a matter of law for Williams-Sonoma, concluding that "no reasonable juror could find that Williams-Sonoma had a sufficient opportunity to correct the alleged dangerous condition" and that Williams-Sonoma "cannot be held liable for negligence."[2]

## II.

We review de novo a district court's grant of judgment as a matter of law. McGinnis v. Am. Home Mortg. Servicing, Inc., 817 F.3d 1241, 1254 (11th Cir. 2016).  We view the evidence in the light most favorable to the non-moving party. See Von Stein v. Brescher, 904 F.2d 573, 578 (11th Cir. 1990) (quotation omitted). A motion for judgment as a matter of law is properly granted if "the facts and

[1] This finding does not construe the record in the light most favorable to the non-moving party.  While McGlashan's testimony was inconsistent on this point, she did say that "no more than a minute and a half" passed between her discovery of the spill and when she heard about the fall.  And, as plaintiffs point out, a reasonable juror could find that the actions described by McGlashan could have taken the high end of her estimate.  Thus, in the light most favorable to the non-movant, it was a minute and a half from McGlashan's discovery of the spill to Perez-Brito's fall.

[2] In one part of its order, the district court characterized the issue as whether Williams-Sonoma had actual or constructive notice of the spill as required by Florida Statutes § 768.0755. Section 768.0755 actually requires a person who "slips and falls on a transitory foreign substance in a business establishment, . . . [to] prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." Fla. Stat. § 768.0755(1).  In this case, plaintiffs established—and Williams-Sonoma did not contest—that McGlashan had actual notice of the spill before the fall.  Instead, the question is whether—even with notice—Williams-Sonoma had a "sufficient opportunity to correct the dangerous condition." See Gaidymowicz v. Winn-Dixie Stores, Inc., 371 So. 2d 212, 214 (Fla. 3d DCA 1979).

inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." Id. "As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural law." Horowitch v. Diamond Aircraft Indus., Inc., 645 F.3d 1254, 1257 (11th Cir. 2011) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938)).

Plaintiffs argue that the district court erred by viewing the evidence of the time from when McGlashan discovered the spill and when Perez-Brito fell as dispositive of the reasonableness of the store's conduct. Instead, according to plaintiffs, "the length of time the store knew of the spill is one factor in the jury's consideration as to the reasonableness of the store's conduct." They further argue that the cases relied on by the district court and by Williams-Sonoma are distinguishable, generally because they are either constructive-notice cases or presented circumstances where, even with actual knowledge, store employees could not have prevented the fall.

The district court was mistaken when it focused exclusively on the length of time between actual notice and the fall. While the length of time between actual notice and a fall is of course relevant to whether a store acts reasonably, it is not conclusive. The cases cited by the parties show that how a store receives actual notice affects whether there was a "sufficient opportunity to correct the dangerous

condition." See Gaidymowicz, 371 So. 2d at 214. An employee could learn of a spill while in another part of the store. See id. Or an employee could hear the spill, but not be able to arrive before a fall. See Publix Super Markets, Inc. v. Heiser, 156 So. 2d 540, 541 (Fla. 2d DCA 1963). In another case, an employee could see the spill and act quickly to clean it up, but a customer could still fall within seconds of the spill. Waters v. Winn-Dixie Stores, Inc., 146 So. 2d 577, 578 (Fla. 2d DCA 1962) (per curiam). Or, as in this case, an employee could discover the spill in person but leave the spill to look for cleaning supplies without another employee available to clean or watch the spill. A bright-line, no-liability rule based on time alone does not account for the many ways that employees could receive actual notice and cannot be conclusive of whether a store's conduct is reasonable.

The cases cited by Williams-Sonoma are not to the contrary. In support of its argument, Williams-Sonoma relies on Dominguez v. Publix Super Markets, Inc., in which the store employees had only seconds to take any corrective action. 187 So. 3d 892, 893 (Fla. 3d DCA 2016). There, a store manager was standing at one end of a seventy-two foot long aisle when he heard a bottle of laundry detergent fall. Id. at 892 & n.1. A video recording showed that within nine seconds the manager ran to the spill and bent over to pick up the bottle. Id. at 893. Four seconds later, a customer rounded the aisle and slipped on the detergent,

while the manager's back was turned.  Id.  As the video showed, "the entire incident, from the time [the manager] heard the bottle fall to the time [the customer] slipped, consumed thirteen seconds."  Id.  The court characterized the issue as "whether the store owner . . . used ordinary care to maintain its premises in a reasonably safe condition."  Id. at 894.  Applying that standard, the court concluded that, under the circumstances, Publix was not negligent and could not be liable.  Id.

Similarly, in Waters, a jar of baby food fell from a customer's cart near a check-out counter.  146 So. 2d at 578.  After the jar fell, a cashier immediately pushed a button signaling for an employee to clean up the debris.  Id.  Nevertheless, four or five seconds after the spill happened, a customer slipped and fell as she approached the check-out counter.  Id. at 579.  The court focused on "[t]he plaintiffs' proximity to the spot where the jar fell and the extremely brief interval of time between the fall of the jar and the fall" of the customer and concluded that the evidence was "insufficient to make a prima facie showing of negligence."  Id. at 580.  In both Dominguez and Waters the mere seconds between notice of the spill and the customers' falls prevented the employees from correcting the dangerous condition.

Two other cases relied on by Williams-Sonoma feature store employees with either a minute or a minute and a half of actual notice of spills.  But unlike

here, those employees had no opportunity to clean the spills or otherwise prevent the customer from falling.  In Heiser, an employee heard a jar shatter and immediately made his way there only to find that a customer had already fallen. 156 So. 2d at 541.  It took the employee between a minute and a minute and a half to arrive at the spill.  Id.  The court held that Publix was not negligent as a matter of law.  Id. at 542.  In Gaidymowicz, two customers, a mother and son, were shopping at a Winn-Dixie.  371 So. 2d at 213.  The son noticed liquid detergent on the floor of an aisle and left the aisle to notify the store manager.  Id.  Upon learning of the spill, the manager directed an employee to clean the spill.  Id.  But, before the employee had a chance to do so, the son returned to the aisle and found that his mother had fallen.  Id.  The court concluded "that with only one minute actual notice, Winn-Dixie did not have a sufficient opportunity to correct the dangerous condition and, therefore, could not be liable on the basis of actual notice."  Id. at 214.  Although Heiser and Gaidymowicz feature similar time between notice and fall as here, those cases are distinguishable because in each the store employee who received notice was not present at the spill and acted reasonably upon receiving notice.

Unlike all of these cases, the evidence in this case, interpreted in the light most favorable to plaintiffs, shows that the Pottery Barn Kids employees had enough time to take precautions to correct the spill and prevent Perez-Brito's fall

after they received actual notice.  McGlashan had actual notice of a spill in front of the cash-wrap, which she knew was a highly trafficked part of the store. McGlashan also believed that Perez-Brito was behind her when she saw the spill. She looked for paper towels behind the cash-wrap and, finding none, decided to go to the stockroom herself, instead of radioing another employee to bring supplies. Before leaving, she told an employee at the cash-wrap about the spill, but there is no evidence that an employee moved to stand by the spill or gave McGlashan any assurance that he or she would warn customers.  McGlashan could have remained at the spill while radioing other employees, the cash-wrap could have been stocked with paper towels or other cleaning supplies for McGlashan's use, or the employee at the cash-wrap could have moved to stand at the spill or have warned customers of the spill.  Instead, McGlashan went to the stockroom at the opposite side of the store to find cleaning supplies while no one watched the spill.  Under these circumstances, even though only a minute and a half may have passed before the fall, a reasonable juror could find that the Pottery Barn Kids employees had a "sufficient opportunity to correct the dangerous condition."  See Gaidymowicz, 371 So. 2d at 214.  As a result, the district court erred in granting Williams-Sonoma's motion for judgment as a matter of law.

**REVERSED.**

9